637 F.Supp. 1138 (1986)
Jane DOE "A", etc., et al., Plaintiffs,
v.
The SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY, et al., Defendants.
No. 85-2801C(1).
United States District Court, E.D. Missouri, E.D.
July 2, 1986.
*1139 *1140 *1141 Ramsey & Taylor, Ross Harry Briggs, St. Louis, Mo., for plaintiffs.
Timothy K. Kellett, St. Louis, Mo., for Sp. Sch. Dist.
Thomas J. Casey, Russell F. Watters, Brown, James & Rabbitt, St. Louis, Mo., for defendant Cerny.

MEMORANDUM
NANGLE, Chief Judge.
This matter is before the Court on separate motions to dismiss filed by the defendants Special School District of St. Louis County (SSD); David Cerny, a former bus driver for SSD; and 12 individual administrators of SSD.
Plaintiffs, nine handicapped children enrolled in the defendant Special School District and their parents, allege that the defendants deprived them of their constitutional rights either by beating and sexually abusing the children or by failing to investigate and to act upon complaints of abuse.
Plaintiffs' first amended complaint contains nine counts. The first count alleges a § 1983 claim against the Board of Education and individual administrators of SSD for failing to provide handicapped students a safe and humane environment, including protection from sexual assaults. In Count II, plaintiffs allege that SSD maintained a de facto policy of failing to investigate complaints of abuse, actively inhibiting investigation of complaints and failing to train and monitor employees. In Count III, the minor plaintiffs allege that the acts of Cerny resulted from a de facto policy of defendant SSD in violation of the Fifth and Fourteenth Amendments and § 1983. Similarly, in Count IV the minor plaintiffs allege that the acts of Cerny resulted from a de facto policy of defendant SSD and violated plaintiffs' rights under the Fifth, Ninth, and Fourteenth Amendments and § 1983. Count V alleges that SSD allowed defendant Cerny to restrain the minor plaintiffs without probable cause in violation of the Fourth, Fifth, and Fourteenth Amendments and § 1983. Count VI purports to state common law claims for assault, battery, and false imprisonment against defendants Cerny and SSD. In Count VII, the minor plaintiffs sue SSD, its Board, and its administrators for their negligent failure to supervise employees and to investigate complaints of abuse. In Count VIII, the plaintiff parents allege that the District, Board, and administrators deprived them of their rights to custody, care, and companionship in violation of the Fifth and Fourteenth Amendments and § 1983. In Count IX, the parents allege tortious interference with their custody rights.
In passing on a motion to dismiss, a court is required to view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss will not be granted merely because the complaint does not state every element necessary for recovery with precision. 5 Wright & Miller, Federal Practice and Procedure § 1216 at 120 (1969). A complaint is sufficient if it "contain[s] allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Id. at 122-23. A complaint should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46, 78 S.Ct. at 101-102.
The complaint alleges the following facts: Defendant David Cerny was employed by SSD as a school bus driver. Between September, 1983 and February, 1985, defendant Cerny repeatedly molested the minor plaintiffs while they were passengers on his bus. These incidents occurred while the bus was stopped at a *1142 transfer point, a location at which the children would make connections between buses on their way to and from school. These incidents included the fondling, stroking, and pinching of the minor plaintiffs' genitalia and buttocks, the masturbation of defendant Cerny in the presence of the minor plaintiffs, the striking of the minor plaintiffs, and the confinement of the students in the school bus for one or more hours after the conclusion of the school day and completion of the bus route. In addition, Cerny frequently started and stopped the school bus so quickly that the students were thrown about the bus. Cerny also made obscene gestures and used profane language in the presence of the children. Due to their handicaps, the minor plaintiffs were incapable of resisting or protecting themselves from the assaultive and abusive behavior of Cerny. Despite complaints from parents, teachers and other employees of SSD, defendants SSD, its Board, and its administrators failed to investigate the actions of Cerny. Indeed, defendant SSD concealed the actions of Cerny by discouraging any investigation of complaints. In addition, the defendants failed to develop a policy to provide training for the investigation of complaints and to screen employees for their propensity to abuse children. Also, the defendants failed to report Cerny's conduct to law enforcement and child protective agencies despite their statutory obligation to do so. As a result of these acts, the plaintiff children suffered serious physical, psychological, and emotional damage, requiring them to undergo medical and psychological treatment. The plaintiff parents have suffered mental anguish and lost the companionship of their children. The minor plaintiffs seek $24,000,000.00 in actual damages and $24,000,000.00 in punitive damages on each count; the parents seek $20,000,000.00 in actual damages and $40,000,000.00 in punitive damages on each count.
Collectively, the defendants present five arguments in support of their motions to dismiss: 1) the plaintiffs failed to allege conduct arising under color of state law; 2) the student plaintiffs failed to allege actions which rise to the level of constitutional violations; 3) the parent plaintiffs failed to allege actions which rise to the level of constitutional violations; 4) the Board and administrators of SSD are protected by the doctrine of official immunity; and 5) SSD is protected by the doctrine of sovereign immunity. As set out below, defendants' motions to dismiss are granted in part and denied in part.

I. UNDER COLOR OF STATE LAW
As defendant Cerny and the individual SSD defendants assert, Cerny's actions were taken as a private citizen and not under color of any state law authorizing him to operate a school bus. As plaintiffs argue, the defendants' actions occurred under color of Mo.Rev.Stat. § 162.900 (Vernon Supp.1986), which delegates authority to the Board of Education of each Special School District to provide free transportation to its students. This Court finds that defendants' actions were taken under color of state law.
To state a claim under § 1983, an individual must allege facts constituting a deprivation of a constitutional right under color of state law. An official's actions are not removed from under color of state law merely because the official acted beyond the scope of the authority granted by state law. As the Supreme Court held in United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law. Accord Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Phaby v. KSD-KSD-TV, Inc., 476 F.Supp. 1051, 1053 (E.D.Mo.1979) (if the sheriff "used the power and prestige vested in him due to his office, even though acting outside the scope of his authority as granted by law, his actions would sufficiently constitute state action.").
Here, the district was obligated by statute to provide free transportation to *1143 handicapped students enrolled in this district. That statute also vested the Board of Education of the district with the authority to promulgate rules and regulations necessary to provide transportation. Under this mandate, SSD employed defendant Cerny to drive a school bus. This arrangement provided Cerny with custody of the children and opportunities to engage in the alleged conduct. Thus, defendant Cerny acted under color of state law.

II. STUDENT PLAINTIFFS' FEDERAL CAUSE OF ACTION
Plaintiffs assert § 1983 claims based upon violations of their Fourth, Fifth, Ninth, and Fourteenth Amendment rights. As defendants argue, the alleged actions sound in tort and do not rise to the ignomy of constitutional violations. In response, plaintiffs assert that the alleged conduct "shocks the conscience" and, therefore, violates the minor plaintiffs' rights to substantive due process. This Court concludes that plaintiffs' allegations state a claim upon which relief may be granted.
Initially, the Court notes that in their motion in opposition to defendants' motions to dismiss the plaintiffs defend only their substantive due process claims. Thus, to the extent plaintiffs rely upon the Fourth, Fifth, and Ninth Amendments, their claims are dismissed. This Court construes plaintiffs' remaining claims as claims arising out of violations of substantive due process as guaranteed by the Fourteenth Amendment.[1]
A public official is liable under § 1983 only if the official deprives an individual of a constitutional right. Baker v. McCollan, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979). Section 1983 does not provide a remedy for violations of duties of care arising out of tort law. Remedies for these injuries must be sought in state court under traditional tort law principles. 443 U.S. at 146, 99 S.Ct. at 2695; Paul v. Davis, 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Thus, the crucial issue is whether plaintiffs allege any deprivation of constitutional rights. As plaintiffs allege, defendants' actions deprive them of liberty without due process of law as guaranteed by the Fourteenth Amendment. As such, plaintiffs purport to allege violations of their right to substantive due process.
The due process clause affords individuals far-reaching protection against intrusions by state officials. The Due Process Clause not only requires the Government to follow appropriate procedures when its agents decide to deprive any person of life, liberty or property, but also bars certain arbitrary Government actions regardless of the fairness of the procedures used to implement them. Daniels v. Williams, ___ U.S. ___, ___, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). By its very nature, the scope of due process protection is not subject to precise definition. As Mr. Justice Frankfurter reasoned,
[d]ue process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are so rooted in the traditions and conscience of our people as to be ranked as fundamental, Snyder v. Massachusetts, 291 U.S. 97, 105 [54 S.Ct. 330, 332, 78 L.Ed. 674], or are implicit in the concept of ordered liberty. Palko v. Connecticut, 302 U.S. 319, 325 [58 S.Ct. 149, 152, 82 L.Ed. 288].
Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952). Or as Mr. Justice Harlan wrote, "the full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees *1144 elsewhere provided in the Constitution. This `liberty' is not a series of isolated points pricked out in terms of the [Bill of Rights]. It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary imposition and purposeless restraints...." Poe v. Ullman, 367 U.S. 497, 543, 81 S.Ct. 1752, 1777, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting). The content of due process must be determined in each case through disinterested inquiry and by judgment not ad hoc and episodic but duly mindful of reconciling the needs of both continuity and of change in a progressive society. 342 U.S. at 172, 72 S.Ct. at 209.
An important manifestation of "liberty" as guaranteed by substantive due process is the right to be free of state intrusions into personal privacy and bodily security. In Johnson v. Glick, 481 F.2d 1028 (2d Cir.1973), the Second Circuit identified a guard's unprovoked beating of a pre-trial detainee as a violation of substantive due process. Similarly, in Jenkins v. Averett, 424 F.2d 1228, 1231-32 (4th Cir. 1970), the Fourth Circuit found the wanton shooting of a criminal suspect to be cognizable and remediable under the Due Process Clause and § 1983. In Davis v. Forrest, 768 F.2d 257 (8th Cir.1985), the plaintiff alleged that two police officers violated his constitutional rights by unnecessarily beating him with their flashlights. The district court had instructed the jury that in order to find the officers liable they must find the officers intruded into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as to literally shock the conscience. 768 F.2d at 258 (citing Hall v. Tawney, 621 F.2d 607 (4th Cir.1980)). The Eighth Circuit upheld this instruction, finding the instruction properly excluded recovery for common law assault and battery and limited liability under § 1983 to constitutional violations. Id. Therefore, a fortiori, allegations of such behavior state an actionable claim. Contra Cole v. Smith, 344 F.2d 721 (8th Cir.1965).[2]
Though the above-cited cases involve adults physically injured by guards or police officers, the principles set forth apply with equal force to abuses by state officials in other contexts. E.g., Fitzgerald v. Williamson, 787 F.2d 403 (8th Cir.1986) (substantive due process claim for deprivation of custody); Doe v. New York City Department of Social Services, 649 F.2d 134, 141-45 (2d Cir.1981) (municipality liable under § 1983 for deliberate indifference to sexual abuse of foster child by foster parent). In Hall v. Tawney, 621 F.2d at 607, plaintiff sued under § 1983 and alleged that severe corporal punishment administered by school officials violated substantive due process rights. The district court dismissed the action for lack of subject matter jurisdiction and for failure to state a claim. In reversing the dismissal as to some defendants, the Fourth Circuit considered the application of substantive due process within public schools. The language of the court bears repetition:
Mindful that not every state law tort becomes a federally cognizable "constitutional tort" under § 1983 simply because it is committed by a state official, we do not find the substance of this right in the parallel right defined by state assault and battery law. Instead, we find it grounded in those constitutional rights given protection under the rubric of substantive due process in such cases as Rochin v. California; Jenkins v. Averett; and Johnson v. Glick: the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court. The existence of this right to ultimate bodily security  the most fundamental aspect of personal privacy  is unmistakably established in our constitutional decisions as an attribute *1145 of the ordered liberty that is the concern of substantive due process. Numerous cases in a variety of contexts recognize it as a last line of defense against those literally outrageous abuses of official power whose very variety makes formulation of a more precise standard impossible. Clearly recognized in persons charged with or suspected of crime and in the custody of police officers, we simply do not see how we can fail also to recognize it in public school children under the disciplinary control of public school teachers. Difficult as may be application of the resulting rule of constitutional law in the public school disciplinary context, it would seem no more difficult than in related realms already well established.
621 F.2d at 613 (citations omitted). Thus, this Court does not doubt that the constitutional rights of children to be free from harm is commensurate with the rights of adults in state custody.
As defendants argue, the alleged actions do not constitute a constitutional deprivation. Defendants quote Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), in support of their argument that tort claims do not state a § 1983 claim. In Screws, the Supreme Court reversed the conviction of Sheriff Screws for violation of § 20 of the Criminal Code, 18 U.S.C. § 52, the criminal counterpart of § 1983. As Justice Douglas wrote, "Violation of local law does not necessarily mean that federal rights have been invaded. The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States." 325 U.S. at 108, 65 S.Ct. at 1038. Screws stands for the proposition that violations of state law, standing alone, do not violate § 20. However, where the acts which violate state law deprive a citizen of federal rights and where these acts occur under color of state law, a § 20 violation may be found. 325 U.S. at 109, 65 S.Ct. at 1039. Here, plaintiffs have alleged deprivation of a constitutional right, independent of any state law claim. Thus, Screws simply does not apply to the instant case as alleged by plaintiffs.
Defendants also cite a variety of cases in which courts found no § 1983 claim because the plaintiff failed to identify a deprivation of a specific Fourteenth Amendment right. 443 U.S. at 137, 99 S.Ct. at 2689; 424 U.S. at 693, 96 S.Ct. at 1156; ___ U.S. at ___, 106 S.Ct. at 662. These cases concern the Due Process Clause as applied to procedural due process or to the incorporation of rights specified by the Bill of Rights. They do not touch upon substantive due process. See 443 U.S. at 147, 99 S.Ct. at 2696 (Blackmun, J., concurring); ___ U.S. at ___, 106 S.Ct. at 677 (Stevens, J., concurring). As explained above, the plaintiffs in this case allege a deprivation of rights guaranteed by the Fourteenth Amendment itself. For present purposes, the plaintiffs need not look beyond the Fourteenth Amendment to identify a guaranteed right. 367 U.S. at 542-43, 81 S.Ct. at 1776-77 (Harlan, J., dissenting).
The acts of abuse alleged by plaintiffs state a substantive due process claim. The acts intrude upon the personal privacy and bodily integrity of these children. The acts intrude in ways more personal and private than a jailhouse beating and in ways which will surely leave psychological scars long after physical healing is complete. Moreover, these acts are keenly distressing given the helplessness and blamelessness of the victims. The alleged acts of defendant Cerny and the alleged tolerance of these acts by SSD and the individual defendants pass beyond the pale of common law torts. They shock the conscience of this Court. Thus, this Court finds the minor plaintiffs' allegations sufficient to state a claim against defendants under § 1983.

III. PARENTS' § 1983 CLAIM
The parents of the student plaintiffs assert § 1983 claims against SSD, the Board, and the individual administrators for deprivation of the parents' rights to custody, *1146 care, and companionship.[3] Defendants concede that the Constitution protects basic aspects of the family relationship against unjustified interference by the state. But, as defendants argue, plaintiffs do not state a cause of action because an isolated action against a family member does not deprive one of a constitutionally protected interest. As defendants argue, the fundamental right to family integrity is not implicated unless the actions result in a wholesale relinquishment of the parents' rights. See Joyner v. Dumpson, 712 F.2d 770, 777-79 (2d Cir.1983). Thus, while conceding the existence of the parents' rights to care, custody, and companionship, the defendants deny that their actions deprived the parents of these rights.
Parents have a fundamental liberty interest in the care, custody, and companionship of their children. Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972); Franz v. United States, 707 F.2d 582, 594-95 (D.C.Cir.1983); Ruffalo v. Civiletti, 702 F.2d 710 (8th Cir. 1983); see also Fitzgerald v. Williamson, 787 F.2d 403, 407 (8th Cir.1986). For example, parents have a right to direct the upbringing and education of their children, and the Government may not interfere with this right by requiring all children to attend public schools. Pierce v. Society of the Sisters of the Holy Names, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. State of Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Accord Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Likewise, the Due Process Clause protects parents' interests in determining the family unit in which to rear their children. Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). The Due Process Clause also guarantees to parents the right to associate with their children, a right which may be deprived by the reckless killing of a child by a police officer. Bell v. City of Milwaukee, 746 F.2d 1205, 1238 (7th Cir.1984); Mattis v. Schnarr, 502 F.2d 588 (8th Cir.1974); see also Trujillo v. Board of County Commissioners, 768 F.2d 1186 (10th Cir.1985); Kelson v. City of Springfield, 767 F.2d 651 (9th Cir.1985).
To state a claim under § 1983, the plaintiffs must not only allege the existence of a constitutional right but must also allege acts sufficient to demonstrate a deprivation of that right. Conceding that due process affords some protection for family integrity, this Court cannot conclude that defendants' actions deprived plaintiffs of this right. Plaintiffs fail to establish how the actions of the defendant bus driver implicate the right of the parents to care for their children. Though plaintiffs allege that they were deprived of custody for one or more hours when Cerny detained the students after school at the end of the bus route, this confinement of the children constitutes only a de minimis interference with custodial rights, not a deprivation of these rights. Moreover, by the alleged actions, defendant Cerny did not challenge the parents' rights to determine the course of their children's upbringing and education. Defendants' actions do rise to the extensive and indiscriminate deprivations with which the Constitution is concerned. Surely the alleged offenses have had and will continue to have tragic consequences for both parent and child; nevertheless, the Court must be mindful of the limits of recovery under § 1983. See ___ U.S. at ___, 106 S.Ct. at 666 (the Constitution does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society). Thus, Count VIII must be dismissed.

IV. STATE LAW CAUSES OF ACTION
In Counts VII and IX, minor plaintiffs and their parents allege that SSD, its Board, and its administrators failed to supervise defendant Cerny and to investigate *1147 complaints of abuse. The students allege physical and emotional damage. The parents allege emotional damage and loss of companionship. In defense of these claims, the individual SSD defendants assert official immunity. Plaintiffs' allegations present common law claims based upon state law. The gravamen of these complaints is that defendants failed to exercise reasonable care. Therefore, this Court must look to Missouri law to determine defendants' duty and to determine the scope of official immunity.
State officials acting within the scope of their authority are not liable for discretionary acts or omissions but may be held liable for torts committed when acting in a ministerial capacity. Kanagawa v. Missouri ex rel. Freeman, 685 S.W.2d 831, 835 (Mo. banc 1985). The characterization of an act as discretionary turns upon the degree of reason and judgment required for its execution. 685 S.W.2d at 836. A discretionary act requires the exercise of judgment in determining how and whether an act should be done or course pursued. Rustici v. Weidemeyer, 673 S.W.2d 762, 768-69 (Mo. banc 1984). In contrast, ministerial acts are "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." 673 S.W.2d at 769 (quoting Yelton v. Becker, 248 S.W.2d 86, 89 (Mo.Ct.App.1952)). These definitions do not create bright lines separating discretionary from ministerial acts. Rather, the question is one of degree, necessarily incapable of reduction to verbal formulas. As the Missouri Supreme Court recognized, "the decision as to whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise of judgment, and the likely consequences of withholding immunity." 685 S.W.2d at 836.
Here, defendants are not engaged in the ministerial act of physically transporting students or maintaining buses for transportation. Rather, defendants formulate policies which are carried out by subordinates. As school district administrators, defendants are responsible for planning for transportation and ensuring the execution of their plans. Defendants' responsibilities require primarily the exercise of judgment rather than the performance of routine tasks. Thus, defendants are immune from liability for negligent selection, training, and supervision of defendant Cerny.
Plaintiffs also predicate their claims upon the negligent failure of SSD officials to report the alleged child abuse to the Missouri Division of Family Services. According to plaintiffs' allegations, the defendant officials received complaints concerning Cerny from parents and teachers. As plaintiffs assert, defendants did not fulfill their duty to report child abuse under Mo.Rev.Stat. § 210.115(1) (Vernon 1983).
Missouri's child abuse statute is contained in Mo.Rev.Stat. §§ 210.110-.160 (Vernon 1983). The statute was designed to encourage reporting of suspected cases of child abuse to the Division of Family Services and to ensure that the Division pursues such reports. Nelson v. Freeman, 537 F.Supp. 602, 605-06 (W.D.Mo.1982). Specifically, §§ 210.115(1) and (2) provide as follows:
1. When any physician, medical examiner, coroner, dentist, chiropractor, optometrist, podiatrist, resident, intern, nurse, hospital and clinic personnel (engaged in examination, care or treatment of persons), and other health practitioner, psychologist, mental health professional, social worker, day care center worker or other child care worker, juvenile officer, probation or parole officer, teacher, principal or other school official, Christian Science practitioner, peace officer or law enforcement official, or other person with responsibility for the care of children, has *1148 reasonable cause to suspect that a child has been or may be subjected to abuse or neglect or observes a child being subjected to conditions or circumstances which would reasonably result in abuse or neglect, he shall immediately report or cause a report to be made to the division in accordance with the provisions of sections 210.110 to 210.165.
2. Whenever such person is required to report under sections 210.110 to 210.165 in his official capacity as a staff member of a medical institution, school facility, or other agency, whether public or private, the person in charge or his designee shall be notified immediately. The person in charge or his designee shall then become responsible for immediately making or causing such report to be made to the division. Nothing in this section, however, is meant to preclude any person from reporting abuse or neglect.
In Missouri, before an act is said to be negligent, there must exist a duty to the individual complaining. Dix v. Motor Market, Inc., 540 S.W.2d 927, 932 (Mo.Ct.App.1976) (citing Vanacek v. St. Louis Public Service Co., 358 S.W.2d 808, 810 (Mo. banc 1962)). In the instant case, plaintiffs assert a duty to report created by the Missouri statute. As Judge Oliver held in Nelson, 537 F.Supp. at 607-11, the Missouri child abuse reporting statute creates a duty owed to the general public, not to specific individuals, and consequently the statute does not support a private cause of action in favor of individuals. Therefore, to the extent plaintiffs rely upon the Missouri statute they fail to state a cause of action. See Lawyer v. Kernodle, 721 F.2d 632 (8th Cir.1983); Jamierson v. Dale, 670 S.W.2d 195, 196-97 (Mo.Ct.App.1984).
Though plaintiffs' arguments are somewhat unclear, they apparently argue that defendants had a common law duty  independent of the statutory duty  to report abuse. Plaintiffs then assert that the mandatory nature of the reporting statute removed all discretion from defendants. As a result, defendants failed to perform a ministerial function and may not seek the protection of official immunity.
This Court does not agree with plaintiffs' characterization of defendants' actions as ministerial. The statute does not require school teachers and administrators to report every suspicion of abuse. Rather, the statute specifically requires reporting only when there is a reasonable cause to suspect abuse. This requirement calls for the exercise of a teacher's or administrator's professional judgment. See Crouch v. Hall, 406 N.E.2d 303, 304 (Ind.Ct.App.1980) (statutory duty to investigate criminal complaints does not create ministerial requirement to investigate alleged rape). Thus, Counts VII and IX are dismissed.

V. SOVEREIGN IMMUNITY
In Counts II, VI, VII, and IX, plaintiffs assert various common law tort claims against defendant SSD. In defense, SSD asserts the doctrine of sovereign immunity.
With Mo.Rev.Stat. §§ 537.600 and .610 (Vernon Supp.1986), the Missouri legislature reestablished the doctrine of sovereign immunity abrogated by the Missouri Supreme Court in Jones v. State Highway Commission, 557 S.W.2d 225 (Mo.banc 1977). Bartley v. Special School District of St. Louis County, 649 S.W.2d 864, 865 (Mo.banc 1983). Section 537.600 provides two exceptions to sovereign immunity: 1) injuries resulting directly from the operation of motor vehicles, and 2) injuries caused by dangerous conditions on a public entity's property.[4] These exceptions operate *1149 in opposition to the general legislative intent to revive sovereign immunity and, therefore, must be strictly construed. 649 S.W.2d at 868 (citing Beiser v. Parkway School District, 589 S.W.2d 277, 280 (Mo. banc 1979)). Moreover, the plaintiff must specifically allege facts establishing the exception. Best v. Schoemehl, 652 S.W.2d 740, 742 (Mo.Ct.App.1983).
Regarding the motor vehicle exception, the alleged actions must relate directly to the operation of the vehicle. In Johnson, plaintiff alleged that he was physically held by a school bus driver to permit another student to beat him. As the Missouri Court of Appeals held, the acts of the driver were not within the exception because the acts did not concern the operation of the bus. The court noted that "the only connection to the bus was the actors' presence therein." 631 S.W.2d at 927. Plaintiff presents no principled distinction between Johnson and the facts of the instant case. Thus, the motor vehicle exception does not apply.[5] The dangerous condition exception applies only to physical defects upon property. Twente v. Ellis Fischel State Cancer Hospital, 665 S.W.2d 2, 11 (Mo.Ct.App.1983); Bates v. State, 664 S.W.2d 563, 565 (Mo.Ct.App.1983). Therefore, that exception to sovereign immunity does not apply, and defendants' motions to dismiss on this ground are granted.
In sum, defendants' motions to dismiss are denied as to the § 1983 claims of the minor plaintiffs based upon substantive due process. Defendants' motions are granted as to all state law claims, the § 1983 claims of the minor plaintiffs' parents, and the § 1983 claims of the minor plaintiffs based upon constitutional provisions other than the due process clause of the Fourteenth Amendment.
NOTES
[1] Count I alleges "undue and unjustified incursions upon the personal security and bodily integrity of the minor plaintiffs herein without due process of law." Count V alleges that the minor plaintiffs were "physically restrained against their will" and "without any reasonable basis and without probable cause." To the extent Count V states a viable claim, it is a claim under substantive due process encompassed by Count I. To simplify further litigation, the Court strikes Count V as redundant pursuant to Fed.R.Civ.P. 12(f).
[2] In Cole v. Smith, the Eighth Circuit concluded that an attack on a prisoner by a state prison official does not state a claim under § 1983. Though the Eighth Circuit has not explicitly overruled Cole, that decision lacks precedential value in light of the more recent holdings cited above. See Jackson v. Allen, 376 F.Supp. 1393, 1396 n. 2 (E.D.Ark.1974); Cf. 768 F.2d at 257.
[3] The plaintiffs assert the Fifth and Fourteenth Amendments as the source of their constitutional rights. Plaintiffs have argued and the Court will consider plaintiffs' cause of action as a substantive due process claim under the Fourteenth Amendment.
[4] As explained by the court in Bartley, other exceptions apply when the government acts in its propriety capacity and when the public entity carries liability insurance. Plaintiffs do not dispute that transportation of school children is a government function entitled to sovereign immunity. Johnson v. Carthell, 631 S.W.2d 923, 926 (Mo.Ct.App.1982). Regarding liability insurance, the court in Bartley held that this exception is a necessary but not sufficient condition of waiver of immunity. In other words, a claimant must establish that one of the § 537.600 exemptions applies and then further establish insurance coverage. Since this Court concludes that neither of the § 537.600 exceptions apply to the instant facts, the Court need not reach the insurance issue.
[5] Plaintiffs allege in paragraph 10 of their first amended complaint that "uncalled for and excessive application of brakes" contributed to their injuries. These alleged injuries fall potentially within the motor vehicle exception to sovereign immunity.

Any potential jurisdiction over these claims is pendent to the Court's jurisdiction over the § 1983 claims. Thus, these claims must derive from a common nucleus of operative fact. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The allegations regarding Cerny's driving ability are wholly apart from the sexual abuse which gives rise to the constitutional deprivations. Thus, to the extent plaintiffs allege common law claims arising out of the operation of the bus, this Court lacks jurisdiction. Moreover, the assertion of pendent jurisdiction lies within the sound discretion of the trial court. 383 U.S. at 726, 86 S.Ct. at 1139. Here, the cause and nature of the injury resulting from poor driving differ substantially from plaintiffs' other claims. Thus, this Court declines to accept jurisdiction over the pendent driving claims.