682 F.Supp. 451 (1988)
JANE DOE "A", et al., Plaintiffs,
v.
The SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY, et al., Defendants.
Nos. 85-2801C(1), 87-1681C(1) to 87-1684C(1) and 87-1686C(1) to 87-1691C(1).
United States District Court, E.D. Missouri, E.D.
March 25, 1988.
On Motion for Reconsideration May 18, 1988.
*452 William Edward Taylor, Ross Harry Briggs, St. Louis, Mo., for plaintiffs.
Timothy K. Kellett, George M. Von Stamwitz, John H. Quinn, III, St. Louis, Mo., for Special School Dist.
Russell F. Watters, Brown, James & Rabbitt, Thomas J. Casey, St. Louis, Mo., for defendant Cerny.

MEMORANDUM
NANGLE, Chief Judge.
Plaintiffs, eleven handicapped children enrolled in the Special School District of St. Louis County (S.S.D.), allege that defendants David Cerny, the S.S.D. and certain S.S.D. officials[1] deprived them of their right to substantive due process in violation of 42 U.S.C. § 1983.[2] Specifically, plaintiffs allege that Cerny, a bus driver for the S.S.D., deprived them of their liberty interest in personal privacy and bodily security by subjecting them to acts of physical and sexual abuse; that the S.S.D. officials were deliberately indifferent to Cerny's acts; and that the S.S.D. had a custom or policy of ignoring and failing to act upon complaints regarding Cerny's misconduct. The matter is now before the Court on: the S.S.D. defendants' motion for summary judgment with respect to all of the plaintiffs, defendant Cerny's motion for summary judgment, and the S.S.D. defendants' joint motion for partial summary judgment with respect to several of the plaintiffs.

I. Summary Judgment Standard.

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356-1357, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the non-moving party may not rest on the allegations in the pleadings but by affidavit or other evidence must set forth specific facts *453 showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2739 (1983).
In determining whether a genuine issue of material fact exists, the Court views the evidence presented through the "prism" of the burden of proof imposed upon the parties by the underlying substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Recently, the Supreme Court noted that: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action'." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (quoting Fed.R.Civ.P. 1). Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, and "[w]here the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial'." Id.

II. Liability of the Individual S.S.D. Officials.

Plaintiffs have sued the individual S.S.D. defendants in their individual as well as their official capacities. A § 1983 action against officials in their official capacities is "tantamount to an action directly against the public entity." Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir.1987). Because the liability of the individual S.S.D. defendants in their official capacities is coextensive with the liability of the S.S.D., the Court will consider the official capacity liability issue below when it addresses the liability of the S.S.D.
An action against officials in their individual capacities seeks to impose personal liability upon the officials for their own culpable action or inaction. Clay, 815 F.2d at 1170. To impose personal liability upon an official, the plaintiff must show that the official was personally involved, in some way, in the violation of the plaintiff's constitutional rights. An official may be personally involved by directly participating in the constitutional violations, by creating a policy or custom of condoning the violations, by failing to remedy known violations, or by training or supervising subordinates in a grossly negligent or reckless manner. See Id.; Patzner v. Burkett, 779 F.2d 1363, 1367 (8th Cir.1985); Williams v. Smith, 781 F.2d 319, 323 (2d Cir.1986). See also City of Springfield, Mass. v. Kibbe, ___ U.S. ___, 107 S.Ct. 1114, 1121, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting).
When an official's personal liability is premised upon failure to remedy known constitutional violations or failure to adequately supervise or train subordinates, the plaintiff must show that:
1. The official received "notice of a pattern of unconstitutional acts" committed by subordinates;
2. The official "demonstrated deliberate indifference [to] or tacit authorization of the offensive acts";
3. The official failed to take sufficient "remedial" action; and
4. The official's failure proximately caused injury to plaintiff.
See Wilson v. City of North Little Rock, 801 F.2d 316, 322 (8th Cir.1986); see also Clay, 815 F.2d at 1170; Patzner, 779 F.2d at 1367. Mere negligence in supervision of subordinates is not sufficient to establish § 1983 liability. See Daniels v. Williams, 474 U.S. 327, 330-33, 106 S.Ct. 662, 664-66, 88 L.Ed.2d 662 (1986); Rubek v. Barnhart, 814 F.2d 1283, 1284 (8th Cir.1987).
Plaintiffs' first amended complaint alleges that the individual SSD officials "failed to adequately investigate the complaints" regarding defendant Cerny's misconduct and "failed to reasonably respond to the pervasive risk of harm" to the plaintiffs. Plaintiffs do not allege that any of the S.S.D. officials directly participated in or observed the alleged violation of the plaintiffs' constitutional rights, instead, plaintiffs base the individual S.S.D. defendants' liability upon their inaction. Therefore, *454 plaintiffs must establish that the individual SSD defendants had "notice of a pattern of unconstitutional acts", were deliberately indifferent to or tacitly authorized the acts, failed to take sufficient remedial action, and that this failure caused injury to plaintiffs.
According to plaintiffs' evidence, defendant Scarnato received a single complaint from a parent that on one occasion defendant Cerny cursed at her and called her names in front of the children on the bus and that her son told her that Cerny was stopping the bus on the side of the road where there was no bus stop. (Plaintiffs' Compliance Report filed August 28, 1987, p. 8). Defendant Scarnato also may have received information from another S.S.D. official that defendant Cerny kissed a child on the bus.[3] Defendant Campbell received only two complaints regarding Cerny's conduct: defendant Marchlewski told defendant Campbell that Cerny kissed a boy and defendant Marchlewski or defendant Hill told defendant Campbell that Cerny used foul language on the bus. (Plaintiffs' Compliance Report filed August 28, 1987, pp. 5, 6, 9). The Court concludes that on the basis of the isolated incidents reported to defendants Scarnato and Campbell, a rational trier of fact could not find that these defendants had "notice of a pattern of unconstitutional acts" and were deliberately indifferent to or tacitly authorized the alleged physical and sexual abuse of plaintiffs. Wilson, 801 F.2d at 322.
Defendants Marchlewski and Hill allegedly received complaints that defendant Cerny used profanity on the bus, kissed a boy on the bus, pushed plaintiff John Doe "M" down the bus steps, and pulled his hair.[4] (Plaintiffs' Compliance Report filed August 28, 1987, pp. 5, 7, 10, 11). Defendant Marchlewski also received complaints regarding Cerny's failure to follow a child's behavior modification program and Cerny's failure to hand out a bus pass, and a complaint that Cerny kissed, kicked and gave John Doe "G" a "snuggle."[5] (Plaintiffs' Compliance Report filed August 28, 1987, pp. 7, 9). Defendant Hill received a complaint that a child had not been picked up at his bus stop and that Cerny physically restrained John Doe "D" to break up a fight. (Plaintiffs' Compliance Report filed August 28, 1987, pp. 7, 12).
Many of the complaints received by defendants Marchlewski and Hill, e.g. failure to give out a bus pass, not picking up a child at a bus stop, restraining a child to break up a fight, are similar to the kinds of complaints routinely received regarding a bus driver's interaction with children. While some of the reported incidents involved offensive actions which well may rise to common-law torts, these actions do not rise to constitutional violations under the circumstances of this case. Thus, the complaints received by defendants Marchlewski and Hill do not constitute "notice of a pattern of unconstitutional actions." Moreover, any failure on the part of defendants Marchlewski and Hill to act upon these complaints does not amount to deliberate indifference to or tacit authorization of the alleged physical and sexual abuse of the plaintiffs.
Of the individual S.S.D. defendants, defendant Stotler received the most notice of defendant Cerny's alleged misconduct. According to plaintiffs' evidence, defendant *455 Stotler received many of the same complaints received by the other individual S.S.D. defendants as well as two additional more serious complaints. In October 1984, defendant Stotler allegedly received a complaint from a parent that defendant Cerny put his hand down a boy's pants and pulled down a boy's pants and spanked him. (Plaintiffs' Compliance Report filed August 28, 1987, pp. 4, 5). In late January or early February 1985, just prior to defendant Cerny's February 8, 1985 arrest, John Doe "K" allegedly told defendant Stotler that Cerny had been touching boys' crotches. (Plaintiffs' Compliance Report filed August 28, 1987, p. 12, John Doe K Deposition, pp. 150-152). While these two additional complaints are serious complaints and involve actions which may rise to constitutional violations, the totality of complaints received by defendant Stotler are insufficient to establish the necessary notice of a pattern of unconstitutional conduct. Further, the John Doe K complaint, which Stotler received just prior to Cerny's arrest, came too late; the alleged violations of plaintiffs' constitutional rights had already taken place and, therefore, could not have been caused by any deliberate indifference on the part of defendant Stotler. Defendant Stotler may have been negligent in her lack of response to the October 1984 complaint, but the mere negligent act of a government official which causes "unintended injury to life, liberty, or property" does not implicate Fourteenth Amendment constitutional protections. See Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). A rational trier of fact could not conclude that defendant Stotler received notice of a pattern of unconstitutional conduct, acted with deliberate indifference or callous disregard to plaintiffs' needs, and thereby caused plaintiffs' injuries.
The present case is unlike police brutality or sexual harassment cases in which supervisory officials, who have received numerous complaints regarding the precise unconstitutional conduct, tolerate or condone the practice and persistently fail to remedy a known and continuing pattern of unconstitutional conduct. See e.g., Harris v. City of Pagedale, 821 F.2d 499 (8th Cir.), cert. denied, ___ U.S. ___, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987) (pattern of prior sexual misconduct by police officers and numerous citizen complaints regarding police sexual misconduct); Herrera v. Valentine, 653 F.2d 1220, 1225 (8th Cir.1981) (pattern of racially-motivated police brutality against American Indians and numerous complaints regarding racist conduct); Bohen v. City of East Chicago, Ind., 799 F.2d 1180 (7th Cir.1986) (repeated and pervasive sexual harassment of female employees by male supervisors and male employees, frequent complaints through official channels, and open acknowledgement of the sexually oppressive working conditions by high-ranking officials). Nothing in the record indicates that the individual S.S.D. defendants tolerated or condoned Cerny's alleged violation of plaintiffs' constitutional rights. To the contrary, they responded to the complaints received by questioning Cerny, by counseling Cerny about physical interventions with children, and by riding on Cerny's bus to observe his behavior. (S.S.D. Defendants' Response to Plaintiffs' Compliance Report filed September 9, 1987, p. 5; Plaintiffs' Compliance Report filed August 28, 1987, pp. 5, 11).
In summary, the Court concludes that a rational trier of fact could not find that the individual S.S.D. defendants had notice of a pattern of unconstitutional acts and displayed deliberate indifference to or tacitly authorized the alleged unconstitutional conduct. Accordingly, the individual S.S.D. defendants are entitled to summary judgment on plaintiffs' § 1983 action.

III. Liability of the S.S.D.

A governmental entity cannot be held vicariously liable for unconstitutional acts of its employees on a theory of respondent superior, but it can be held liable under § 1983 for constitutional violations which occur as a result of an official policy or custom. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The plaintiff must show that an official policy or custom which is "fairly attributable" to the governmental entity caused the "particular constitutional violation." Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir.1987). The entity must be a "moving force" behind the constitutional deprivation; Monell, 436 U.S. at 694, 98 S.Ct. at 2038; Clay, 815 F.2d at 1170; and an "affirmative link" must exist between the policy or custom and the "particular constitutional violation alleged." Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 reh'g denied, 473 U.S. 925, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985).
*456 Official policy involves "a deliberate choice to follow a [particular] course of action ... made from among various alternatives" by an official who has the final authority to establish governmental policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). Custom involves a pattern of "persistent and widespread" practices of governmental officials, which are not necessarily approved through formal decision making channels, but which become so "permanent and well settled" as to have the force and effect of law. Monell, 436 U.S. at 691, 98 S.Ct. at 2036 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)); Garza v. City of Omaha, 814 F.2d 553, 556 (8th Cir.1987).
Only decisions made by officials with "final policymaking authority" are attributable to a governmental entity. Pembaur, 475 U.S. at 483, 106 S.Ct. at 1300; City of St. Louis v. Praprotnik, ___ U.S. ___, ___, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 56 U.S.L.W. 4201, 4204, (1988). Whether a particular official has "final policymaking authority" is determined by the Court by reference to state law. Praprotnik, ___ U.S. at ___ - ___, 108 S.Ct. at 924-26. For the governmental entity to be held liable under § 1983, the alleged unconstitutional action "must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area...." Id. at ___, 108 S.Ct. at 924.
Under Missouri law, the Special School District Board of Education is responsible for establishing and operating educational programs for handicapped children and for providing transportation and establishing all necessary rules for the transportation of handicapped children. Mo.Rev.Stat. §§ 162.855, 162.890. The School Board of each district is empowered to make rules and regulations necessary for the operation of the school district. Mo.Rev.Stat. § 171.011. Under the rules and regulations of the S.S.D. Board of Education, the Board, as the "corporate policy-making body," is responsible for formulating and adopting official policy for the district. (S.S.D. Defendants' Supplementary Memorandum, Exhibit BA). The Board is the "final authority" with respect to establishing S.S.D. policy, (S.S.D. Defendants' Supplementary Memorandum, Exhibit BBA); Board members have no authority individually to take official action. (S.S.D. Defendants' Exhibit BA). The superintendent functions as the chief executive officer of the district and is responsible for carrying out Board policies. (S.S.D. Defendants' Exhibit BBA).
It is clear that under state law and the regulations promulgated by the S.S.D. Board pursuant to state law that no individual Board member has the final authority to establish S.S.D. policy, and S.S.D. policy can only be formulated by the Board functioning as a legislative body. Although no individual S.S.D. Board member has final authority to establish S.S.D. policy, defendant Scarnato, as superintendent and as the official responsible for implementing Board policy, may be "high enough" in the S.S.D. structure that his "actions can be said to represent a decision" of the S.S.D. itself. See Praprotnik, at ___, 108 S.Ct. at 925.
There is, of course, no official policy formulated by the S.S.D. Board of Education which authorizes or condones physical or sexual abuse of handicapped children. There also is no evidence that defendant Scarnato deliberately chose to follow a course of action of ignoring complaints regarding physical or sexual abuse of handicapped children. See Pembaur, 475 U.S. at 483, 106 S.Ct. at 1300; Tuttle, 471 U.S. at 823, 105 S.Ct. at 2436.
The record also does not support the existence of a customary practice of deliberate indifference to the violation of handicapped children's constitutional rights. For the S.S.D. to be held liable on the basis of custom, there must exist a pattern of "persistent and widespread" unconstitutional practices which have become so "permanent and well settled" as to have the force and effect of law. See Monell, 436 U.S. at 691, 98 S.Ct. at 2036. Because the Court has concluded that the individual S.S.D. defendants did not have "notice of a pattern of unconstitutional acts" and did not display deliberate indifference to or tacitly authorize the violation of plaintiffs' constitutional rights, a custom of deliberate indifference to or tacit authorization of the alleged unconstitutional conduct cannot be attributed to the S.S.D.
Independent evidence of a policy or custom must exist, apart from any misconduct of an employee, to hold a governmental entity liable under § 1983. See Tuttle, 471 U.S. at 824, 831, 105 S.Ct. at 2436, 2440. The constitutional deprivation must be attributable to the policies or customs of the governmental entity, and not to other factors such as the employee's "own unbalanced *457 mental state." Tuttle, 471 U.S. at 831, 105 S.Ct. at 2440 (Brennan, J., concurring). To hold a governmental entity liable on the basis of a policy inferred from the "isolated misconduct of a single, low-level" employee would amount to imposing liability on the theory of "strict respondeat superior" which was "rejected in Monell." Id. The policy or custom requirement was intended to prevent imposition of liability upon a governmental entity merely because the entity hired "one `bad apple'." Tuttle, 471 U.S. at 821, 105 S.Ct. at 2435. Thus, the existence of a S.S.D. policy or custom cannot be inferred merely on the basis of defendant Cerny's alleged unconstitutional acts.
For the foregoing reasons, the Court concludes that the S.S.D. did not have a policy or custom of ignoring complaints of physical or sexual abuse of handicapped children, and therefore, the S.S.D. is entitled to summary judgment on plaintiffs' § 1983 claim.

IV. Liability of Defendant Cerny.

A. Defendant Cerny's Alleged Acts of Physical and Sexual Abuse.
Defendant Cerny contends that he is entitled to summary judgment because none of the acts alleged in plaintiffs' complaint against him rise to the level of a constitutional violation and the alleged acts constitute, at most, common law torts. The Court previously addressed and rejected this argument in denying Cerny's motion to dismiss. See Jane Doe "A" v. Special School District of St. Louis County, 637 F.Supp. 1138, 1143-45 (E.D.Mo.1986). Thus, the Court will only briefly address the argument here.
To recover under § 1983, plaintiffs must prove that Cerny's conduct deprived them of rights, privileges or immunities secured by the Constitution and laws of the United States. See 42 U.S.C. § 1983. Plaintiffs argue that Cerny's acts of physical and sexual abuse deprived them of their substantive due process rights. The due process clause protects against state deprivation of an individual's life, liberty or property interest without due process of law. The liberty interest protected by substantive due process encompasses the right to be free from state intrusion upon one's bodily security and personal privacy. See Ingraham v. Wright, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977); Hall v. Tawney, 621 F.2d 607, 613 (4th Cir.1980). State action which "shocks the conscience" or runs counter to "certain decencies of civilized conduct" violates the due process clause. See Rochin v. California, 342 U.S. 165, 172-73, 72 S.Ct. 205, 209-10, 96 L.Ed. 183 (1952); Griffin v. Hilke, 804 F.2d 1052, 1056 (8th Cir.1986), cert. denied, ___ U.S. ___, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987).
Some of the acts allegedly committed by Cerny include: touching, grabbing, or pinching the plaintiffs' genitals and buttocks, pulling their pants down and spanking them, striking or sitting on them, threatening them and exposing himself and masturbating in front of them. The Court cannot find, as a matter of law, that these acts do not rise to violations of plaintiffs' substantive due process rights. As alleged, these acts constitute an intrusion upon the plaintiffs' bodily security and personal privacy sufficient to "shock the conscience" of the jury. Davis v. Forrest, 768 F.2d 257, 258 (8th Cir.1985).

B. Plaintiffs Who "Witnessed" Defendant Cerny's Acts.
Defendant Cerny contends that certain plaintiffs who merely "witnessed" his alleged improper acts or who were touched in non-sexual ways do not have a § 1983 cause of action. Defendant argues that these plaintiffs essentially allege a state cause of action for intentional infliction of emotional distress. The United States Supreme Court has clearly held that damages for mental and emotional distress caused by a violation of constitutional rights are recoverable under § 1983. Carey v. Piphus, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). The issue before the Court then is whether defendant Cerny violated the constitutional rights of the plaintiffs who suffered mental distress but who were not directly subject to the alleged acts of sexual misconduct.
Defendant is correct in stating that individuals may not recover under § 1983 merely because they suffered emotional distress as a result of witnessing acts which deprived others of their constitutional rights. Buikema v. Hayes, 562 F.Supp. 910 (N.D.Ill.1983). Individuals may recover under § 1983, however, for violation of their own constitutional rights. The substantive due process protection against state intrusions upon an individual's personal security extends to protection of emotional as well as physical well-being when *458 the emotional distress is accompanied by some actual risk of physical harm. White v. Rochford, 592 F.2d 381, 386 (7th Cir. 1979); Conner v. Sticher, 801 F.2d 1266, 1268 (11th Cir.1986).
Defendant Cerny contends that John Does K and F who merely "witnessed" the alleged violation of other children's constitutional rights and John Does H, J and M who witnessed the acts and were touched in non-sexual ways, fail to state a § 1983 action. According to John Doe K's deposition, he observed Cerny masturbate himself and commit various acts of physical and sexual abuse against other children such as touching their genitals, threatening, hitting, and kissing them. He also told his psychologist that he wore a "jock strap with a cup because he was afraid that Cerny would do something to him." John Doe F also testified that he observed defendant Cerny stimulating himself and abusing other children. John Doe F's mother testified that he began to wear two pairs of underwear in October 1984 and became excessively modest. Cerny allegedly pinched John Doe H in the buttocks several times, struck John Doe J in the leg, and grabbed John Doe M to break up a fight. John Does H, J and M also observed Cerny's alleged acts of misconduct toward other children.
It is clear to the Court that, although John Does K, F, H, J, and M may have not been directly subject to defendant Cerny's alleged acts of sexual abuse, their emotional distress may have arisen from an actual risk of physical harm. If the allegations against Cerny are true, these plaintiffs were more than mere witnesses to the violation of other childrens' civil rights. They observed acts and heard threats against other children which put them in fear of intrusions upon their own bodily security and personal privacy. They were in a position in which they could have been the next targets of the alleged physical and sexual abuse. Thus, John Does K, F, H, J, and M's own liberty interest in personal security and emotional well-being were implicated by Cerny's alleged misconduct.

C. Plaintiffs on Defendant Cerny's Bus.
Finally, defendant Cerny contends that he is entitled to summary judgment with respect to certain plaintiffs who never rode on or rode for only a brief period of time on Cerny's bus. According to affidavits submitted by the S.S.D. defendants and completed by S.S.D. bus drivers, transportation aides, and the transportation supervisor, John Doe C did not ride on Cerny's bus during the 1984-85 school year and John Does E, I, and K rode on Cerny's bus for only the first four days of the 1984-85 school year while a transportation aide was on the bus.
John Doe C claims that he was on Cerny's bus during the 1984-85 school year and he describes, in his deposition, various acts of physical and sexual abuse that he witnessed Cerny commit on the bus. (John Doe C Deposition, pp. 14-18). John Doe K testified at his deposition that he rode on Cerny's bus during 1984-85. (John Doe K Deposition, p. 15). The S.S.D. defendants admit that John Does E, I, and K were transported on Cerny's bus during the 1983-84 school year. (Defendant S.S.D. Answers to Plaintiffs' Supplemental Interrogatory No. 1(b) filed September 23, 1987). Because a factual dispute exists as to whether John Does C and K rode on Cerny's bus during 1984-1985 and because defendants admit that John Does E, I, and K rode on Cerny's bus during 1983-84, summary judgment on this issue is inappropriate. See Hillebrand v. M-Tron Industries, Inc., 827 F.2d 363 (8th Cir.1987).
For the foregoing reasons, defendant Cerny's motion for summary judgment is denied.

ORDER
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED that the "Motion for Summary Judgment" of defendant Special School District and of the individual Special School District defendants be and is granted.
IT IS FURTHER ORDERED that the S.S.D. defendants' "Joint Motion for Partial Summary Judgment" be and is denied as moot.
IT IS FURTHER ORDERED that defendant David Cerny's motion for summary judgment be and is denied.
IT IS FURTHER ORDERED that the S.S.D. defendants' motion to reject the ex parte statement of Madeline Wendland be and is denied.
IT IS FURTHER ORDERED that summary judgment be and is entered in favor of the defendant Special School District and in favor of the individual Special School *459 District defendants Scarnato, Campbell, Marchlewski, Hill and Stotler on plaintiffs' complaint.

ON MOTION FOR RECONSIDERATION
IT IS HEREBY ORDERED that plaintiffs' motion for reconsideration of this Court's order granting summary judgment in favor of the Special School District defendants be and is denied.
In support of their motion for reconsideration, plaintiffs argue that the Court overlooked "significant examples" of prior notice of misconduct received by the Special School District (S.S.D.) defendants. The examples of prior notice cited by plaintiffs involve alleged sexual encounters between defendant Cerny and other adults. The Court did not overlook these incidents, but rather found that these alleged incidents were irrelevant and immaterial to the issue of whether the S.S.D. defendants had notice of defendant Cerny's alleged physical and sexual abuse of the handicapped children.
Plaintiffs also seek to supplement the record with the affidavit of Elizabeth Decker, a former member of the S.S.D. Board of Education. Recently, the Eighth Circuit described the proper use of the motion for reconsideration as follows:
Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion.
Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir.1988) (quoting Rothwell v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir.), as amended, 835 F.2d 710 (7th Cir.1987).
Plaintiffs do not contend that they were unable to present the information in the affidavit prior to the entry of the summary judgment. In fact, when plaintiffs' counsel filed the motion for reconsideration on April 4, 1988, he indicated that the "information was available" to him "last fall." The parties were permitted to file numerous memoranda and supplementary materials during the six months that the S.S.D. defendants' motion for summary judgment was pending before this Court. The Court also granted plaintiffs leave to file the ex parte statement of Madeline Wendland, another former member of the S.S.D. Board of Education. Plaintiffs had ample opportunity to file the affidavit of Elizabeth Decker before the summary judgment decision was issued. Therefore, the plaintiffs' motion to reconsider the Court's judgment is denied.
NOTES
[1] The only remaining individual S.S.D. defendants are Scarnato, Marchlewski, Hill, Campbell and Stotler. The other individual S.S.D. defendants were dismissed pursuant to a prior Court order.
[2] Plaintiffs' original complaint contained other constitutional and state law claims which were dismissed by this Court in a previous opinion. See Jane Doe "A" v. Special School District of St. Louis County, 637 F.Supp. 1138 (E.D.Mo.1986).
[3] The S.S.D. defendants have filed a motion to reject plaintiffs' filing of an ex parte statement of Madeline Wendland, a former member of the Special School District Board, who was recently dismissed from this action. The Court has denied the S.S.D. defendants' motion to reject this statement in order to consider all of the evidence relevant to the motions for summary judgment before the Court. Although the S.S.D. defendants dispute many of the incidents of notice to the S.S.D. officials cited by plaintiffs, for purposes of the S.S.D. defendants' motions for summary judgment, the Court will assume that such notice was received.
[4] The evidence in the record does not support this allegation against defendant Cerny. John Doe "M" testified in his deposition, that Cerny never pushed him and that he was only touched by Cerny once when Cerny grabbed him by the arm to break up a fight. (John Doe "M" Deposition, pp. 28-30, 52).
[5] John Doe "G" has voluntarily dismissed his complaint against defendants and is no longer a party to this action.