**Mark Dwayne VOORHIES, Plaintiff,**

v.

**CONROE INDEPENDENT SCHOOL DISTRICT, et al., Defendants.**

**Civ. A. No. H–83–1958.**

United States District Court,
S.D. Texas,
Houston Division.

June 4, 1985.

David Randell, James Reaves, Schmidt & Reich, Houston, Tex., for plaintiff.

Kelly Frels, Jeff Horner, Bracewell & Patterson, Houston, Tex., for Conroe Independent School Dist. and Phil Summy.

Michael Hays, James H. Spear, Taylor, Hays, Price, McConn & Pickering, Houston, Tex., for Rockwell, Inc.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

Presently before this court is defendants' motion for summary judgment. Plaintiff opposes the motion, asserting that genuine issues of material fact exists so as to preclude summary judgment.

### I. BACKGROUND

Plaintiff Mark Dwayne Voorhies injured his right hand on October 21, 1981 while enrolled in a building trades class at Conroe High School within defendant Conroe Independent School District ("CISD"). Plaintiff was to receive credit toward graduation for the completion of this course of study. At the relevant time, plaintiff was sixteen (16) years of age and enrolled in the tenth (10th) grade.

Plaintiff and his classmates were engaged in a building project involving the construction of wood cabinets. As part of this project, plaintiff was to cut pieces of plywood for drawer bottoms on a tablesaw owned by defendant CISD. Plaintiff contends that when he began to push the material through the blade alongside the guide or "rip-fence" the blade became bound and the material "kicked back". This threw his right hand into the blade, causing the injuries complained of in this lawsuit.

The defendants contend that defendant Phil Summy, plaintiff's shop teacher, adjusted the saw blade to the proper height and instructed the plaintiff to use a push stick before he started cutting the wood. Mr. Summy then turned to assist another student. While cutting the wood, the plaintiff attempted to pull the wood back through the rotating blade, causing the wood to bind on the saw blade. Contrary to Mr. Summy's instructions, he was not

using a push stick. He jerked his hand across the tips of the blade, lacerating the first three fingers of his hand.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that the defendants' actions violated his civil rights. Plaintiff alleges that the court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1343(3). The defendants deny that a constitutionally protected right is involved and, therefore, assert that this court does not have jurisdiction.

## II. SUMMARY JUDGMENT MOTION

The defendants filed a motion for summary judgment alleging that: (1) CISD did not implement a policy or tolerate a custom which infringed upon the plaintiff's constitutional rights; (2) the alleged tort was not sufficiently egregious to entitle plaintiff to recover under § 1983; (3) CISD is not liable on a respondeat superior theory; and (4) Mr. Summy is not liable in either his official or individual capacity because he is immune.

In response, the plaintiff asserts that defendants CISD and Mr. Summy tolerated a usage, custom, and or policy of maintaining a tablesaw in an unreasonably dangerous condition to students enrolled in that shop class and permitting minor children to operate that equipment without supervision; that such action constitutes a deprivation of plaintiff's constitutionally protected liberty interest in freedom from damage to his bodily integrity; and that genuine issues of material fact exist to preclude the granting of summary judgment.

"Summary judgment 'may be granted only if it appears from pleadings, depositions, admissions and affidavits, considered in the light most favorable to the non-moving party, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985) (citing *United States v. An Article of Drug*, 725 F.2d 976, 984 (5th Cir.1984)). Defendants, as the moving parties, had the burden to show that no genuine issue of material fact exists. *Id.* Once defendants successfully discharged this burden, the burden shifted to plaintiff to counter defendants affidavits with opposing affidavits or other competent evidence setting forth specific facts to show that there is a genuine issue of material fact for trial. *Id.* Once the burden shifted, plaintiff could not demonstrate a fact issue by resting on mere allegations of his pleading. Unsupported allegations or conclusory affidavits are insufficient to either support or defeat a motion for summary judgment. *Id.* (citing C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure:* Civil 2d § 2738 (1983)).

In ruling on a summary judgment motion, the court is obliged to draw every reasonable inference from the facts in favor of the party opposing the motion. To grant summary judgment, the court must conclude that the facts and inferences point so strongly and overwhelmingly in favor of one party, that reasonable men could not arrive at a contrary verdict. *Powers v. Nassau Development Corp.*, 753 F.2d 457, 462 (5th Cir.1985). Although the court must resolve all inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact when none exists. *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir.1984). That the movant appears more likely than not to prevail at trial is no reason to grant summary judgment. The trial court is not to weigh evidence, assess its probative value or decide factual issues. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir.1984). With these principles in mind, the court will review the law governing the substantive issues raised and the summary judgment proof.

## III. Section 1983 and Official Action

Section 1983 provides in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured

by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983 (1976).

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a governmental entity is a person within the meaning of § 1983. Accordingly, a local governmental entity, which includes school districts, may be liable under § 1983 when official policy or governmental custom is responsible for a deprivation of rights protected by the Constitution; but the court rejected governmental respondeat superior liability under § 1983. *Id.* at 694, 98 S.Ct. at 2037.

Recently, the fifth circuit sitting *en banc* defined official policy as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984).

Defendants' proof demonstrates a concern by the school board for the health, safety and welfare of its students. Although the school board did not promulgate rules specifically addressing safety in shop class, the board did issue rules governing health, maintenance of buildings, security, and professional ethics of the teachers, which included providing a safe environment for students. *See* Exhibit C, at-tached to defendants' memorandum in support of motion.

In addition, the defendants have substantiated their allegations with detailed affidavits. Affidavits of school board members indicated that only they had authority to implement and adopt policy; that board members alone determined the curriculum used in the vocational department, and that the board must approve all machinery or equipment before it may be purchased for use in that department. *See* Exhibits G & H, attached to defendants' first supplemental motion. Further, an affidavit of the Vocational Director of CISD states that vocational teachers are provided with training on safety on a yearly and as needed basis. In addition, the teachers are supervised throughout the year, are evaluated periodically, and constantly receive literature on safety.

Plaintiff contends that the school board delegated authority to the teachers to implement safety standards in the classroom. Plaintiff relies on Mr. Summy's deposition and affidavit wherein he states that he gave four weeks of safety instructions before students were allowed to operate equipment in the class; that he gave them a safety examination, setting the passing score at 80%; and that he required a permission slip to be signed by the parents. Plaintiff also submitted an affidavit by an expert witness to support his contention that the machinery was dangerous and the safety supervision was inadequate. Plaintiff contends that this evidence creates a material issue of fact.

To hold CISD liable, the acts complained of must be those of the governing body or a policy maker. The fifth circuit has defined a

"policymaker" [as] one who takes the place of the governing body in a designated area of [school] administration: [School] policymakers not only govern conduct they decide the goals for a particular [school] function and devise the means of achieving those goals. Policymakers act in the place of the governing body in the area of their responsibility;

they are not supervised except as to the totality of their performance.

. . . . .

[T]he delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee.... The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board.

*Webster*, 735 F.2d at 841 (citing *Bennet v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).

In essence, plaintiff contends that Mr. Summy is a policymaker as so defined, that he set the safety standards for the class, and that the standards in conjunction with the unsafe equipment were inadequate to protect plaintiff from the injuries he sustained.

The evidence as presented demonstrates that the board did not actually delegate authority to Mr. Summy to formulate policy. Drawing all inferences in the light most favorable to the nonmovant, however, the court finds that a set of circumstances might conceivably be proved at trial demonstrating that the board did not promulgate shop safety rules and impliedly left it to teachers to do so, and that in all the shop classes the teachers individually formulated rules and procedures for safety. However, the record establishes that the teachers lacked authority to make decisions about equipment.

Thus, this case turns on whether the CISD maintained a practice of allowing teachers to formulate inadequate safety procedures so as to constitute

"a persistent, widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [CISD] policy." If actions [CISD] employees are to be used to prove a custom for which the [school district] is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [its] employees. The trier of fact must be able to charge the governing body with actual or constructive knowledge of such actions of subordinates.... "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as for example, where the violations were so persistent and widespread that they were subject of prolonged public discussion or of a high degree of publicity."

*Webster*, 735 F.2d at 842, *citing Bennett*, 728 F.2d at 768.

The defendants have supplied the court with affidavits of school board members stating that they had no actual knowledge of unsafe practices, and that there was no publicity on the issue of safety in shop class, it was not the topic of discussion in the news media, and that no parent or student brought this concern to the board's attention at any board meetings. *See* Exhibits G & H. In addition, the record establishes that only three minor incidences occurred since 1979 in Mr. Summy's class, and that the district's accident rate for shop classes is low. See Exhibits A & D, attached to defendants' first supplemental motion.

■ The plaintiff has not presented the court with any summary judgment evidence to controvert the defendants' proof. But, again drawing all inferences in favor of the plaintiff, the court finds it is conceivable that the plaintiff could prove at trial that the board should have been aware of this situation if it had properly exercised its responsibilities. Accordingly, the court feels constrained to rule that defendants are not entitled to summary judgment as a matter of law on this basis.

## IV. CONSTITUTIONAL TORTS: EGREGIOUSNESS

Defendants contend that the actions complained of do not implicate any constitutional rights. The claim before this court is based on Mr. Summy's alleged negligence in removing the safety guard from the machine used in shop class and CISD's failure to monitor the safety of its students, whether because it delegated that authority to teachers or because it neglected its responsibilities. Plaintiff alleges he has a constitutional right to be free from bodily harm, whether intentionally or negligently inflicted, when compelled by a state law to attend school.[1]

Section 1983 was enacted to protect people only against violations of their constitutional rights. Thus the fifth circuit has repeatedly held that to "subject a state agency to the federal Section 1983 remedy for deprivation of a federal constitutional or legal right, the conduct of the state officials or employees must be 'sufficiently egregious as to be "constitutionally tortious."'" *Hull v. City of Duncanville,* 678 F.2d 582, 584 (5th Cir.1982) (citing *Willims v. Kelley,* 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981)).

Defendants cite to several cases in which the court has held that the actions complained of were not sufficiently egregious to implicate a constitutional right. *See, e.g., Raley v. Fraser,* 747 F.2d 287, 289 (5th Cir.1984) (allowing redress under § 1983 only if "a state officer's actions caused severe injuries, was grossly disproportion- ate to the need for action under the circumstances, and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounts to an abuse of official power that shocks the conscious," *citing Shillingford v. Holmes,* 634 F.2d 263 (5th Cir.1981)); *Hull,* 678 F.2d at 584 (city's negligent failure to maintain proper- ly railway crossing not actionable under § 1983); *Williams,* 624 F.2d at 698 (stran- gulation to death of a prisoner was "at most an arguably negligent performance of lawful custodial function"); *York v. Cedar- town,* 648 F.2d 231, 232–33 (5th Cir.1981) (city's negligent design and construction of street and drainage system did not consti- tute the "abuse of governmental power sufficient to implicate the plaintiff's consti- tutional rights.").

In response, plaintiff points out that the Supreme Court has held that a student's fourteenth amendment liberty interests are implicated when a teacher administers cor- poral punishment as a disciplinary mea- sure. *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Plain- tiff asserts that these same interests are implicated when a teacher causes injury to a child, even though that injury was a result of negligence rather than deliberate action. *See Parratt v. Taylor,* 451 U.S. 527, 534–35, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

Plaintiff also relies on a case factually similar to the case *sub judice,* wherein Judge Vela found the acts alleged suffi- cient under § 1983 and the fourteenth amendment. *Flores v. Edinburg Consol-*

---

1. The record contains some uncertainty as to plaintiff's age at the time of the accident. In the Joint Pretrial Order's statement of the case, plaintiff is alleged to have been sixteen years old at the relevant time. In plaintiff's memo- randum of authorities in opposition to summa- ry judgment, plaintiff is alleged to have been seventeen years old.

    The defendants contend that Texas law pro- vides that: "Every child in the state who is as much as seven years of age and not more than seventeen years of age shall be required to at- tend the public schools in the district of his residence...." Tx.Educ.Code Ann. § 21.032 (Vernon 1972). Accordingly, defendants argue that this statute means that any student who is seventeen years and one day old at the time he is to start school in any given year, cannot be compelled to attend school.

    The court notes, however, that effective Sep- tember 1, 1981 that provision was amended to change the language "not more than seventeen" to "who has not completed the academic year in which his 16th birthday occurred...." Tex. Educ.Code Ann. § 21.032 (Vernon Supp.1985). Because neither party has proved this fact by competent summary judgment evidence, the court will infer that plaintiff was sixteen as alleged in the pretrial order and compelled to attend school. The court notes that it does not construe plaintiff's affidavit as evidence estab- lishing his age at seventeen.

*idated Independent School District,* 554 F.Supp. 974, 977–80 (S.D.Tex.1983). Subsequent to plaintiff's response, however, that opinion was reversed on other grounds. 741 F.2d 773 (5th Cir.1984). In his concurring opinion, Judge Garza stated that he had substantial doubts whether the injury in question was constitutionally tortious. *Id.* at 779 n. 1 (Garza, J., concurring).

■ Not every tort or trespass committed by a state official or government is a violation of constitutional rights. Likewise, the § 1983 remedy was not intended to be superimposed on the states to redress each and every tort committed by a state official. The court, although sympathetic to plaintiff's assertion that he is entitled to a safe environment in school, takes note of the Supreme Court's warning in *Parratt v. Taylor,* 451 U.S. at 544, 101 S.Ct. at 1917:

> To accept [plaintiff's] argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society.

At most, Mr. Summy's removal of the safety guard provided by the manufacturer was negligent. However, Mr. Summy detailed his reasons for removing the guard, explained that he provided a four week safety course, required students to pass a safety examination, and tutored students on the questions they missed. Defendants' expert Nedon Mums provided a detailed affidavit stating that he concurred with Mr. Summy's judgment about the guard. Plaintiff's expert's affidavit conclusorily states that the equipment was too large for a shop class, that Mr. Summy's judgment was wrong, and that the safety training was inadequate, and gives no facts in support. The court finds this inadequate to controvert defendants' facts to defeat a motion for summary judgment. *See supra* Section II. The court determines that the acts in question, even if negligent, were not sufficiently egregious as to be constitutionally tortious and that invocation of § 1983 and the fourteenth amendment to obtain redress for an injury sustained as a result of this alleged negligence "denigrates the fundamental values [§ 1983 and the fourteenth amendment] embody." *Woodard v. Los Fresnos Independent School District,* 732 F.2d 1243, 1244 (5th Cir.1984). Therefore, the court finds that defendants are entitled to summary judgment as a matter of law.[2]

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment shall be, and the same is, GRANTED.

---

**2.** Because the court grants summary judgment on this issue, it is unnecessary to address defendants' final allegation that Mr. Summy is entitled to immunity.