Reginald TURLEY, By and Through his next friend, Trichelle TURLEY, and Monae Taylor, by and through her next friend, Lonetta Taylor, Plaintiffs,

v.

SCHOOL DISTRICT OF KANSAS CITY, MISSOURI; Mary A. Arney; James Bonadonna; Fred Heine; Julia Hill; Sue Fulson; Sue Ross; Robert Stephens; Carl Struby; Sandra Walker, Defendants.

No. 87–1029–CV–W–8.

United States District Court, W.D. Missouri, W.D.

May 3, 1989.

Roy King, Jr., Kansas City, Mo., Ruth M. Benien, David R. Morris, Shamberg, Johnson, Bergman & Goldman, Overland Park, Kan., for plaintiffs.

Allan V. Hallquist, Maurice Watson, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, Mo., for defendants.

ORDER

STEVENS, District Judge.

Plaintiffs filed this lawsuit, pursuant to 42 U.S.C. § 1983, alleging that the School

District of Kansas City, Missouri (School District)[1] violated their constitutional rights by failing to monitor adequately, supervise adequately, and terminate Kathleen Warren,[2] a teacher who administered corporal punishment to plaintiffs. The case is currently before the court on defendant's motion to dismiss the case for failure to state a claim pursuant to Fed.R.Civ. P. 12(b)(6) or, in the alternative, for summary judgment.

Plaintiffs allege that on May 29, 1987 Kathleen N. Warren, a teacher employed by the school district, struck plaintiffs with a plastic baseball bat causing them physical and mental injuries. Complaint ¶ 8. According to plaintiffs, Warren left her classroom unattended, in violation of school board policy, while showing a video to her students. Plaintiff Monae Taylor, who was not a student of Warren's, entered the room and shortly thereafter she and Reginald Turley began roughhousing. When Warren returned to the classroom and saw the students fighting, she picked up a black plastic baseball bat and, without warning, hit the students on the face, neck, shoulders, and legs. Department of Social Services Child Abuse/Neglect Investigation Summary at 1. She then chased Monae Taylor out of the room while wielding the bat. Plaintiff Reginald Turley suffered bruises and broken skin on his shoulder.

He also began to suffer from headaches after the incident. Turley Deposition at 13–14. Plaintiff Monae Taylor received bruises on her thigh and other parts of her body and also suffers from recurring headaches. Department of Social Services Child Abuse/Neglect Investigation Summary at 3. In addition to their physical injuries, Turley became a disciplinary problem after the incident and Taylor became withdrawn and fearful, and ultimately transferred to a different school because of her fear of Warren. Deposition of Lonetta Taylor at 21–33.

Plaintiffs allege that the school district acted in violation of 42 U.S.C. § 1983 because it failed to supervise, monitor, and terminate Kathleen Warren, even though the district was aware that Warren had a violent disposition. Specifically, plaintiffs allege that Warren, who had previously violated the school district's corporal punishment policy[3] and shot and killed her husband,[4] should never have been hired and that after she was hired she should have been terminated when the school district learned of her violent disposition and of her emotional instability. In addition, plaintiffs argue that the school district's failure to enforce its corporal punishment policy[5] is further evidence of a section 1983 violation.

---

1. Plaintiffs also sued each individual member of the Kansas City, Missouri School Board at the time of the incident and George Garcia, the superintendent of the School Board. Plaintiffs have agreed to dismiss all defendants except for the Kansas City, Missouri School District and, therefore, this order will refer to only one defendant.

2. Warren was originally named as a defendant but she was never served. As noted, *infra*, at 337, plaintiffs believe they have located Warren and will again attempt to serve her.

3. On March 22, 1983, Connie Renne, principal of Longfellow School, reprimanded Warren for administering corporal punishment to a student in violation of district policy. This reprimand was placed in Warren's file. In addition, Gloria Turley, Reginald's grandmother who worked at D.A. Holmes School as a teaching assistant, testified by affidavit that she had been advised that Warren had hit another student with a yardstick prior to the incident at issue in the present case. Although Turley's testimony may not be admis-

sible in court because of its hearsay nature, the court notes the testimony here since it must give plaintiffs, as the nonmoving party, "the benefit of every doubt and every favorable inference that may be drawn from the evidence." *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984).

4. The shooting was found to be justifiable.

5. At the time of the incident the corporal punishment policy read as follows:

(a) no corporal punishment shall be administered without the written consent of the parent or guardian; (b) in no case shall punishment be inflicted by striking or slapping on or about the head; (c) corporal punishment shall not in any case be administered by the principal in the presence of any other pupil; (d) any corporal punishment shall be administered by the principal in the presence of at least one other witness who shall be a certified member of the school staff or by a teacher in the presence of the principal; (e) the principal shall have recorded in writing any instance of

The school district's motion to dismiss is supplemented with affidavits, depositions, and other materials and, consequently, this court will treat the motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b) (providing that motions to dismiss for failure to state a claim that include matters outside the pleadings will be treated as motions for summary judgment). *See also, Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (when motion to dismiss for failure to state a claim included matters outside of pleadings, court was required to treat it as a motion for summary judgment). Thus, in reviewing defendant's motion this court must consider whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In making this determination the court is guided by the Supreme Court's reminder that summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Thus,

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.*

The Supreme Court has explained that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party.... If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). *See also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden of Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'") (footnote and citations omitted) (emphasis in original).

The parties agree that Warren's actions violated the district's corporal punishment policy. Defendant argues, however, that it cannot be liable under section 1983 for the actions of one of its employees because section 1983 does not allow for claims based on a *respondeat superior* theory. *See Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Plaintiffs, on the other hand, argue that section 1983 liability is possible in this case since the school district knowingly acquiesced in the violation of its corporal punishment policy and knew that Warren was emotionally unstable.

■ Plaintiffs note that information contained within Warren's personnel file could or should have put the district on notice of Warren's violent disposition. Plaintiffs point to evaluations noting that "personal problems affects [sic] [Warren's] professional life" and that "some unfortunate personal conflicts need to be resolve [sic]." May 23, 1980 Evaluation. Similarly, her 1981 evaluation noted that "[t]his school year has been filled with unfortunate circumstances and instances of poor judgment

corporal punishment, specifying the cause, method and witness and shall transmit a copy of this record within one (1) day to the Department of Student Placement; (f) if a parent or guardian will administer the corporal

punishment so as to preserve the discipline of the school in the case of any specific offense, no further punishment for the same offense shall be inflicted by the school.
1986–88 Employee Handbook at 55.

which made her environment unpleasant" and that her "personal problems has [sic] had a tendency to get in the way of optimum performance." March 3, 1981. John Rivette, the principal at Troost Elementary noted in a March 3, 1981 evaluation that Warren was being transferred to a new school and that he hoped her performance would improve. In addition to these evaluations, Warren's personnel file also includes a written reprimand for an unauthorized administration of corporal punishment [6] separate from the one at issue in the present case. Plaintiffs also note that at the time of the instant incident, Eddie Lane, principal of D.A. Holmes, could have instituted an evaluation of plaintiff. He chose not to do so, however, even though he had previously held special evaluations when teachers "were not performing their duties as [he] saw fit." Lane Deposition at 40–41.

The parties agree that the school district, as a local government body,

> can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690, 98 S.Ct. at 2035. Section 1983 liability cannot, however, be premised on an injury inflicted by a local government's employees. *Id.* at 691, 98 S.Ct. at 2036. Liability may occur only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly

be said to represent official policy, inflicts the injury ..." of which plaintiff complains. *Id.* at 694, 98 S.Ct. at 2037. *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (in order for tortious conduct to be the basis of a section 1983 suit the conduct " 'must be pursuant to a municipality's official policy' ").

Defendant argues that plaintiffs have failed to meet their burden under section 1983 since they cannot prove that Warren's actions constituted an official policy. Indeed, defendant notes that plaintiffs agree that Warren's actions directly violated the district's official policy. Plaintiffs, on the other hand, argue that, notwithstanding Warren's violation of district policy, the district's knowing acquiescence of Warren's violent disposition constitutes an official custom or policy sufficient to state a claim under section 1983. Specifically, plaintiffs argue that in light of the school district's knowledge of Warren's past behavior the district's failure to supervise and monitor Warren rises to the level of a constitutional tort.

The Eighth Circuit has held that while a plaintiff cannot recover under section 1983 pursuant to a *respondeat superior* theory, a municipality may be held liable under section 1983 if there is a failure "to properly train, supervise, direct or control the actions of a subordinate who causes the injury." *Pearl v. Dobbs*, 649 F.2d 608, 609 (8th Cir.1981). More specifically, "a municipality's continuing failure to remedy known unconstitutional conduct of its [employees] is the type of informal policy or custom that is amenable to suit under section 1983." *Herrera v. Valentine*, 653 F.2d 1220, 1224 (8th Cir.1981). The Supreme Court recently further refined this holding, noting that liability may be created under section 1983 for a municipality's failure to train its employees if the failure amounts to "deliberate indifference to the rights of persons" with whom the employees come into contact. *City of Canton, Ohio v. Harris*, —— U.S. ——, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Thus,

---

**6.** *See, supra,* at note 3.

under *City of Canton,* it appears as though plaintiffs could recover under their failure to supervise and monitor claims if they can show that the failure amounted to deliberate indifference by the school district to its pupils. The mere fact that the monitoring or supervision was "negligently administered" will not be enough to prove a section 1983 violation. Sound training or supervision programs sometimes have quirks and adequately supervised or monitored employees will sometimes make mistakes but "the fact that they do says little about ... the legal basis for holding the city liable." *Id.* 109 S.Ct. at 1206. The question of whether a municipality exercised deliberate indifference in its failure to supervise or monitor employees must be made by the factfinder. *Id.*

While *Herrera* and *City of Canton* related specifically to the conduct of police officers, the reasoning of those decisions applies equally to other types of municipal employees. Indeed, the United States District Court for the Eastern District of Missouri specifically noted that section 1983 cases dealing with constitutional torts committed by police officers are directly applicable to cases involving constitutional torts by school district employees. *See Doe "A" v. Special School District of St. Louis County,* 637 F.Supp. 1138 (E.D.Mo.1986). Plaintiffs in *Doe* were handicapped school children who had been beaten and/or sexually abused by school district employees. Plaintiffs alleged that the school district "maintained a *de facto* policy of failing to investigate complaints of abuse, actively inhibiting investigation of complaints and failing to train and monitor employees." *Id.* at 1141. Although the court did not deal with the specific issue of whether the school district was liable under a *respondeat superior* theory, the court refused to grant the motion to dismiss.[7] In finding that the plaintiffs had stated a claim under section 1983 the court specifically noted that cases involving "adults physically injured by guards or police officers ... apply with equal force to abuses by state officials in other contexts." *Id.* at 1144.

A case decided by this court involving constitutional torts of police officers is directly applicable to the instant case. In *Overbay v. Lilliman,* 572 F.Supp. 174 (W.D.Mo.1983), this court held that a sheriff's knowing acquiescence to an unconstitutional practice is sufficient to state a claim under section 1983. Plaintiff in *Overbay* sued the county, as well as the deputy sheriff who caused his injuries, alleging that the county failed to train, supervise and discipline the employee and that the county failed to enforce its policies regarding detained individuals. *Id.* The county moved to dismiss the complaint arguing that it could not be held liable for the sheriff's action under a *respondeat superior* theory. The court refused to dismiss the case, finding that section 1983 liability could attach since the county had knowledge of the deputy's past history of violence and was negligent in supervision and training. *Id.* at 177. Specifically, the court held that where a sheriff knew of an employee's proclivity to attack detained individuals the sheriff acquiesced in the unconstitutional behavior by failing to reassign the employee. *Id.* at 176.

The situation in the present case closely parallels that presented to the court in *Overbay.* The school district had knowledge of Warren's past failure to comply with the district's corporal punishment policy. In addition, evaluations over a three-year period repeatedly noted that Warren had personal problems stemming from the shooting of her husband. The principal at D.A. Holmes could have specially evaluated Warren, but chose not to do so. Thus, like the county in *Overbay,* defendant in the instant case knew that Warren had a history of violence yet apparently did not take any steps to prevent future unconstitutional conduct.

Indeed, the school district's passivity in dealing with Warren could be further evidence of a section 1983 violation. Although the school district had an official policy regarding corporal punishment there

---

7. The court focused on the issue of whether the individual defendants acted under color of state law rather than addressing the *Monell* concerns mentioned above.

is some indication in the record that the school district did not take any steps after Warren initially violated the policy to ensure that the same violation would not occur again. The Supreme Court recently noted that "[r]efusals to carry out stated policies could obviously help to show that a municipality's actual policies were different from the ones that had been announced." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 928, 99 L.Ed.2d 107 (1988). In other words, a municipality's refusal to carry out a stated policy can be evidence of the type of custom or practice that is actionable under section 1983. *Austin v. City of East Grand Rapids*, 685 F.Supp. 1396, 1405 (W.D.Mich.1988) (quoting *Praprotnik*, 108 S.Ct. at 926, 928). A genuine issue of material fact exists in this case as to whether the district adequately supervised and monitored Warren and as to whether the school district refused to carry out its corporal punishment policy. Therefore, defendant's motion for summary judgment must be denied on the issue of plaintiff's failure to state a claim.

■ In addition to arguing that plaintiffs have not stated a claim, defendant also argues that the plaintiffs have not alleged facts sufficient to prove a violation of any constitutional rights. The parties agree that a corporal punishment case cannot be based on the procedural due process clause. *See Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (court holds that infliction of corporal punishment pursuant to official policy does not violate procedural due process clause). While the United States Supreme Court has never ruled on the precise question, several courts of appeals have held that in certain situations substantive due process rights may be implicated by the administration of corporal punishment. *See, e.g., Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980) ("the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injuries so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excessive zeal that it amounted to a brutal and inhumane abuse

of official power literally shocking to the conscience"); *Garcia by Garcia v. Miera*, 817 F.2d 650, 657 (10th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988) ("excessive corporal punishment could deny substantive due process").

The Eighth Circuit recently joined these courts, holding that the administration of corporal punishment could violate substantive due process rights in certain situations. *Wise v. Pea Ridge School District*, 855 F.2d 560 (8th Cir.1988). Plaintiff in *Wise* had been playing "dodge ball" with six other boys, despite the school coach's admonitions not to play the game. When the coach saw the boys playing he asked them to sit out for the remainder of the physical education class. *Id.* at 562. After class was over the coach "gave each of the boys two 'licks' on the buttocks with a wooden paddle." *Id.* This administration of corporal punishment complied with the school district's policies. Wise brought suit alleging that the use of corporal punishment violated his substantive due process rights.

The Eighth Circuit found that in some situations the infliction of disciplinary corporal punishment could rise to the level of a substantive due process violation. The court stated that in determining whether the coach's action violated substantive due process four factors had to be considered:

1) the need for the application of corporal punishment; 2) the relationship between the need and the amount of punishment administered; 3) the extent of injury inflicted; and 4) whether the punishment was administered in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 564. The court found that the coach's use of corporal punishment in *Wise* did not rise to the level of a substantive due process violation. *Id.* In making this determination the court emphasized that the coach had given plaintiffs previous warnings not to participate in the dodge ball game and had administered the punishment in accordance with the school district's policy. The court also noted that

plaintiffs received only "two licks" and that while the hits caused "some discomfort" they were not "excessive or administered for improper reasons." *Id.*

The facts of the present case are different from those presented to the Eighth Circuit in *Wise.* Unlike *Wise,* the corporal punishment in this case was not administered in accordance with the school district's official policy. In addition, no verbal warnings were given to plaintiffs to stop roughhousing before Warren picked up the plastic bat and hit them. Although defendant argues that plaintiffs did not receive serious injuries from Warren's hits, plaintiffs allege that they still suffer recurring headaches and emotional distress. Thus, the court concludes that a question exists as to whether the punishment inflicted in this particular case rises to the level of a substantive due process violation. The resolution of this question turns primarily on the testimony of the witnesses at trial and the credibility which the factfinder gives to those witnesses. The determination of whether a substantive due process violation occurred must be made by the jury and not by the court on a motion for summary judgment. Thus, defendant's motion will be denied.

Finally, the court notes that prior to this case's April 17 trial setting the court orally granted plaintiffs' motion for a continuance based on the fact that plaintiffs had located Warren and were again going to attempt service upon her. Plaintiffs are urged to use due diligence in serving Warren and both parties are urged to cooperate in completing any additional discovery that may need to be taken. The case will be reset for trial on the court's fall accelerated jury docket, commencing Monday, September 25, 1989. Accordingly, it is

ORDERED that defendants Mary A. Arney, James Bonadonna, Fred Heine, Julia Hill, Sue Fulson, Sue Ross, Robert Stephens, Carl Struby, Sandra Walker and George Garcia are dismissed. It is further

ORDERED that defendant's motion for summary judgment is denied. It is further

ORDERED that this case is set for trial on the fall accelerated jury docket com-mencing September 25, 1989. A final pre-trial conference will be held on August 25, 1989 at a time to be announced later.