Pamela E. **FENSTERMAKER**, et al.

v.

Edward **NESFEDDER.**

Civ. A. No. 92–3640.

United States District Court, E.D. Pennsylvania.

Aug. 31, 1992.

Richard J. Orloski, Orloski & Hinga, Allentown, Pa., and Phillip B. Silverman, Harris & Silverman, Philadelphia, Pa., for plaintiff.

John E. Freund, III, King McCardle Herman & Freund, Allentown, Pa. and Phillip B. Silverman, Harris & Silverman, Philadelphia, Pa., for defendant.

## OPINION

CAHN, District Judge.

This case arises out of a series of events which transpired during a wrestling meet

at Dieruff High School, in Allentown, Pennsylvania, on February 2, 1991. Michael Fenstermaker ["Michael"] was a wrestler for the visiting team, which was from Salisbury High School. Defendant Edward Nesfedder ["the coach"] was Salisbury's wrestling coach. In the course of his bout, Michael injured his knee. During the stoppage following Michael's injury, Michael's mother and guardian, Pamela Fenstermaker ["the plaintiff"], who was in attendance at the meet, informed the coach that Michael was not permitted to continue wrestling because Michael would probably sustain further, and more severe, injuries to his knee. Despite this directive from the plaintiff, the coach sent Michael back to finish the bout. Michael's knee was, in fact, injured further, and correcting the injuries has required three surgical operations.[1]

The plaintiff, acting in both her individual capacity and in her capacity as the guardian for Michael, filed suit against the coach and the Salisbury School District on June 22, 1992. The suit, brought pursuant to 42 U.S.C. § 1983, alleged that the coach had violated Michael's constitutional rights by sending him back into the bout, and that the Salisbury School District had failed to provide the coach with adequate training. *See generally City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) ("We hold today that the inadequacy of [a municipal actor's employee's] training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employee] come[s] into contact.") (footnote omitted); *Stoneking v. Bradford Area School District,* 882 F.2d 720, 725 (3d Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990) ("Nothing in *DeShaney [v. Winnebago County Department of Social Services,* 489 U.S. 189,

109 S.Ct. 998, 103 L.Ed.2d 249 (1989)] suggests that state officials may escape liability arising from their policies maintained in deliberate indifference to actions taken by their subordinates."); *Turley v. School District of Kansas City, Mo.,* 713 F.Supp. 331, 335 (W.D.Mo.1989) ("plaintiffs could recover under their failure to supervise and monitor claims if they can show that the failure amounted to deliberate indifference by the school district to its pupils. The mere fact that the monitoring or supervision was 'negligently administered' will not be enough to prove a section 1983 violation.").

The defendants filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on August 6, 1992. On August 18, 1992, the plaintiff filed a response to the 12(b)(6) Motion, along with an amended complaint.[2] The amended complaint did not include any claims against the Salisbury School District. The coach is therefore the only defendant remaining in this case. Since the claims asserted against the coach in the amended complaint are not materially different from those asserted against him in the original (the gravamen of both is that, by sending Michael back into the bout, the coach violated Michael's constitutional rights), the court will proceed as if the defendant had moved to dismiss the amended complaint pursuant to Rule 12(b)(6).[3] Since the plaintiff, on the facts presented, cannot demonstrate that the coach's actions violated Michael's constitutional rights, the court will grant the defendant's Motion, and dismiss the plaintiff's case.

## I. STANDARDS FOR DISMISSAL FOR FAILURE TO STATE A CLAIM PURSUANT TO FED.R.CIV.P. 12(b)(6)

When ruling on a 12(b)(6) Motion, a court

---

**1.** This statement of facts is taken from the plaintiff's pleadings, and makes every inference in the plaintiff's favor.

**2.** In the court's order of August 24, 1992, this response was held to have been filed in a timely fashion.

**3.** Although the court could take the position that the filing of the amended complaint rendered the 12(b)(6) Motion moot, doing so would only result in a waste of resources because the defendant would certainly move to dismiss the amended complaint. The court sees no need to force the defendant to refile a motion which he has already filed.

must accept as true all factual allegations in the ... complaint and all reasonable inferences that can be drawn from them. The ... complaint must be construed in the light most favorable to the plaintiffs, and can be dismissed only if the plaintiffs have alleged no set of facts upon which relief could be granted.

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1410 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

## II. NECESSARY ELEMENTS OF A § 1983 CLAIM

■ In order to state a claim under § 1983, a plaintiff must allege, in essence, that a state actor caused a civil rights violation, and that the violation was not the result of mere negligence on the state actor's part. *See Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Jane Doe A v. Special School District of St. Louis County*, 901 F.2d 642, 646 (8th Cir.1990); *D.T. by M.T. v. Independent School District No. 16*, 894 F.2d 1176, 1193 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990); *Metzger by and through Metzger v. Osbeck*, 841 F.2d 518, 520 n. 2 (3d Cir.1988); *Williams v. City of Boston*, 784 F.2d 430, 433–34 (1st Cir.1986); *Grubbs v. Aldine Independent School District*, 709 F.Supp. 127, 129 (S.D.Tex.1989); *Thelma D. v. Board of Education of the City of St. Louis*, 669 F.Supp. 947, 949 (E.D.Mo.1987). A high school wrestling coach is unquestionably a state actor when engaged in coaching a school wrestling team at a school sponsored wrestling meet. Whether Michael's constitutional rights were violated will be discussed *infra* in Section III of this Opinion. Finally, the plaintiff has alleged that, in instructing Michael to resume the bout, the coach acted knowingly, intentionally, purposefully and recklessly. *See* Amended Complaint at

¶ 13. The plaintiff infers that the coach acted intentionally since she told the coach that Michael was not to continue with the bout because doing so would result in further injuries to his knee, and the coach nonetheless instructed Michael to resume wrestling. Such allegations are sufficient to create a triable issue of fact as to whether the coach acted with the requisite *mens rea* to violate § 1983.

## III. CONSTITUTIONAL RIGHTS IMPLICATED IN A HIGH SCHOOL WRESTLING MEET

■ Since § 1983 does not create substantive rights, but simply allows plaintiffs to recover damages for violations of rights secured by other federal laws or by the federal constitution, *see Wilson v. Garcia*, 471 U.S. 261, 278, 105 S.Ct. 1938, 631, 85 L.Ed.2d 254 (1985); *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1367 (3d Cir.1992); *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir.1989); *Schuster v. Thraen*, 532 F.Supp. 673, 676 (D.V.I.1982), the plaintiff must allege that the coach's conduct violated Michael's constitutional rights in order to state a claim.[4] The court will therefore examine the constitutional rights which are implicated when a coach instructs a student to resume a bout and, in attempting to do so, the student is injured.

### A. *The Eighth Amendment*

■ Although the Eighth Amendment can form the basis for a § 1983 claim in other contexts when a plaintiff asserts that she was physically injured by a state actor, *see, e.g., Hudson v. McMillian*, —— U.S. ——, ——, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir.1986); *United States v. Georvassilis*, 498 F.2d 883, 885 (6th Cir. 1974); *Buckner v. Nevada*, 599 F.Supp. 788, 790 (D.Nev.1984), the Supreme Court

---

**4.** Although the violation of a federal statutory right can give rise to a § 1983 claim, the plaintiff has not alleged that Michael's federal statutory rights were violated. Since the court does not know of any federal statutory rights which could be violated by the coach's conduct, the court will only discuss whether the plaintiff has adequately pleaded the violation of a constitutional right. Similarly, the court will not consider whether the coach violated a state law duty because a violation of state law cannot give rise to a § 1983 claim. *See D.R.*, 972 F.2d at 1375.

has held that the Eighth Amendment's protection does not extend to schoolchildren. *See Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977). Michael cannot, therefore, argue that the pain inflicted upon him during the bout constituted "cruel and unusual punishment" because the Eighth Amendment simply does not apply to this case. *Cf. Flores v. Edinburg Consolidated Independent School District,* 554 F.Supp. 974, 980 (S.D.Tex.1983) (holding, in a § 1983 case brought by a student who was injured during woodshop, that "the Eighth Amendment is inapplicable to the facts as alleged by the Plaintiff."); *Rhodus v. Dumiller,* 552 F.Supp. 425, 427 (M.D.La.1982).

### B. *The Fourth Amendment*

In *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the Supreme Court held that

> [i]t is evident that the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject.... [T]he accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.

*T.L.O.,* 469 U.S. at 340–41, 105 S.Ct. at 742. *See also Williams by Williams v. Ellington,* 936 F.2d 881, 886–87 (6th Cir.1991) (school officials did not violate § 1983 when they subjected two female students to a strip search in an effort to determine whether the students were in possession of drugs); *Edwards for and in behalf of Edwards v. Rees,* 883 F.2d 882, 884 (10th Cir.1989) ("the Supreme Court has never held that 'the full panoply of constitutional

rules applies with the same force and effect in the schoolhouse as it does in the enforcement of criminal laws.'") (quoting *T.L.O.,* 469 U.S. at 350, 105 S.Ct. at 747 (Powell, J. concurring)).

■ A student is, therefore, entitled to limited Fourth Amendment protection. The Fourth Amendment, however, only applies where there has been a "search" or a "seizure." The plaintiff in this case cannot claim that either has occurred. For this reason, the Fourth Amendment cannot serve as a predicate for the plaintiff's § 1983 claims. *See Webb v. McCullough,* 828 F.2d 1151, 1153 (6th Cir.1987) (affirming the dismissal of a student's Fourth Amendment claims while finding that the student's substantive due process claims presented a triable issue of fact); *Patton v. Bennett,* 304 F.Supp. 297, 300 (E.D.Tenn. 1969) (holding that, in a § 1983 case brought by a student against a teacher who pulled a chair out from under the student, causing the student to be injured, that claims based on the Fourth Amendment must be dismissed).

### C. *Procedural Due Process*

■■ Procedural Due Process is only implicated when there is no post-hoc remedy available to a plaintiff. *See Rhodus,* 552 F.Supp. at 427. Since state tort law provides a post-hoc remedy for the plaintiff's injuries,[5] and since it would be unrealistic and unworkable to require a coach to hold a hearing before sending a wrestler back into a bout, procedural due process cannot form the basis for a § 1983 action in this case. *Cf. Metzger,* 841 F.2d at 521 n. 3 (stating, in a case involving a § 1983 action brought by a student against a teacher who physically restrained the student at poolside, causing the student to lose consciousness and sustain injuries, that "[w]e see no basis for the procedural due process claim here."); *Turley,* 713 F.Supp. at 333 ("a corporal punishment case cannot be

---

**5.** Although school officials are generally immune to suits at state law, *see generally* 42 Pa. Const.Stat.Ann. § 8541, this immunity does not extend to acts of willful misconduct. *See* 42 Pa. Const.Stat.Ann. § 8550. Since the plaintiff has alleged that the coach acted knowingly, intentionally, and purposefully, state law remedies are available.

based on the procedural due process clause."); *Rhodus*, 552 F.Supp. at 427.

### D. *Substantive Due Process*

#### 1. *In General*

■ Courts have held that the Due Process Clause creates, and protects, a liberty interest in personal bodily integrity. *See D.R.*, 972 F.2d at 1367; *see also Ingraham*, 430 U.S. at 673, 97 S.Ct. at 1413 ("Among the historic liberties so protected [by the Due Process Clause] was a right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security."). Michael's liberty interest in bodily integrity is not implicated in this case, however. Courts have held that a student's liberty interest is implicated when the student was physically injured by a teacher. *See Ingraham*, 430 U.S. at 674, 97 S.Ct. at 1414 ("where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, we hold that Fourteenth Amendment liberty interests are implicated."); *Stoneking*, 882 F.2d at 724 ("The principal distinction between DeShaney's situation and that of Stoneking is that DeShaney's injuries resulted at the hands of a private actor, whereas Stoneking's resulted from the actions of a state employee."); *Metzger*, 841 F.2d at 520 (cause of action stated when a teacher allegedly choked a student into unconsciousness); *Meyer by Wyrick v. Litwiller*, 749 F.Supp. 981, 985 (W.D.Mo.1990) (refusing to dismiss a § 1983 claim when the plaintiff alleged that a teacher hit a student); *Thelma D.*, 669 F.Supp. at 949 (refusing to dismiss a § 1983 claim when the plaintiffs alleged that they were sexually assaulted by a teacher); *Doe A v. Special School District of St. Louis County*, 637 F.Supp. 1138, 1145 (E.D.Mo.1986); *Patton*, 304 F.Supp. at 300 ("Courts have recognized with near unanimity that physical beatings and other violence may result in deprivation of due process of law."). Nevertheless, there is no allegation in this case that the coach directly injured Michael in any way.

Instead, the plaintiff has alleged that since the coach allowed Michael to wrestle, Michael was injured by a third party (the wrestler from Dieruff High School).[6] For this reason, cases holding that a student's liberty interest can be violated when a teacher violates the student's bodily integrity are distinguishable. *See, Reeves by Jones v. Besonen*, 754 F.Supp. 1135, 1139 (E.D.Mich.1991) (holding, in a § 1983 case brought on behalf of a high school football player who was injured during a "hit line" hazing ritual on the team bus, that "the Plaintiff was not deprived of any right, privilege, or immunity guaranteed by the United States Constitution or Statutes."); *Voorhies v. Conroe Independent School District*, 610 F.Supp. 868, 972–73 (S.D.Tex. 1985) (dismissing a § 1983 claim brought by a student who was injured by a table saw which had been operated without a safety guard in a high school woodshop).

■ Indeed, the court finds that Michael's liberty interest is not implicated in this case at all. A liberty interest grounded in substantive due process protects against, at most, a person from being compelled to act, or to submit to an act of another, against his or her will.[7]

---

6. Although at least one court has held that an allegation that a school official failed to prevent a student from being injured by a third party states a claim under § 1983, *see Lopez v. Houston Independent School District*, 817 F.2d 351, 356 (5th Cir.1987), it did so in a situation where the student was compelled to be in the place where the injury occurred. Since Michael did not have to attend this extracurricular wrestling meet, *Lopez* is distinguishable. *Cf. Flores*, 554 F.Supp. at 980 (refusing to dismiss a student's § 1983 action based on an alleged violation of his liberty interest because "[t]he Plaintiff herein was not engaged in a voluntary or extracurricular activity such as a *school sporting*

*event,* nor did his injury occur at a school function after regular school hours. Instead, his alleged deprivation occurred while he was engaged in a core curriculum course, and at a time when his attendance was compelled by state law.") (emphasis supplied). For a more complete discussion of a school official's duty to protect students from being harmed by third parties, *see infra* Section III.D.2. of this Opinion.

7. The reach of substantive due process cannot be extended infinitely. "To extend the protections of the Constitution to the most mundane fracases of everyday life cheapens and trivial-

In this case, however, Michael freely chose to continue with the bout.[8] Had he felt that he was hurt too badly, he could have told the coach that he was unable to continue. Had Michael opted not to continue wrestling, the coach could have done nothing (save for employing physical force, which would then implicate Michael's liberty interests) to coerce Michael into resuming the bout.[9] The coach could not have failed Michael in a class, or otherwise prevented his academic career from progressing if he chose not to complete the bout. Nor is it alleged that the coach could suspend Michael from school, or take other punitive action against him, if he refused to continue wrestling. The only way the coach could make Michael finish the bout was to convince him to do so of his own

izes not only the Constitution itself, but those rights and privileges which are protected under it, as well." *Reeves,* 754 F.Supp. at 1140 n. 2. *See also Ingraham,* 430 U.S. at 674, 97 S.Ct. at 1414 ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); *D.T. by M.T.,* 894 F.2d at 1188 ("Where a claim is based on the Due Process Clause of the Fourteenth Amendment (as here), the Supreme Court has held that such does not transform every tort committed by a state actor into a constitutional violation."); *Meyer,* 749 F.Supp. at 984 ("[I]t is well established that not every violation of state tort or criminal assault laws committed by a state official results in a constitutional violation cognizable under section 1983".) (citation omitted); *Voorhies,* 610 F.Supp. at 873 ("invocation of § 1983 and the fourteenth amendment to obtain redress for an injury sustained as a result of this alleged negligence 'denigrates the fundamental values [§ 1983 and the fourteenth amendment] embody.'") (citation omitted) (brackets in original); *Rhodus,* 552 F.Supp. at 428. *Cf. Carroll by Carroll v. Parks,* 755 F.2d 1455, 1457 (11th Cir. 1985) ("Although some may find the conduct of the [school officials] in participating in the distribution of the [yearbook] photograph [which showed a student's genitals] or in refusing to halt distribution of the photograph to be deplorable, reprehensible, and insensitive, appellant simply has not stated a federal constitutional deprivation. We are left to wonder what legitimate purpose these appellees, school officials, (charged with the responsibility for the welfare of youngsters and the inculcation of respect for common decency) can offer to justify their conduct. Nevertheless, the district court is right: If a cause of action exists on these facts, it arises in tort and must be pursued in another forum."); *Grubbs,* 709 F.Supp. at 130 ("a student has no constitutionally protected right to a safe environment in school.").

**8.** The Supreme Court has recently held, in a case involving the First Amendment, that it is "formalistic in the extreme" to say that a high school student can choose to forgo a graduation ceremony. *See Lee v. Weisman,* — U.S. —, ———, 112 S.Ct. 2649, 2658–59, 120 L.Ed.2d 467 (1992). This court notes that a bout is readily distinguishable from a graduation ceremony. A student (barring rather extraordinary circumstances) can only participate in a single high school graduation ceremony. That ceremony represents the culmination of the student's academic career, and is universally recognized as an important milestone in a student's life. It is for this reason that a high school graduation is usually shared with the student's extended family, and is often widely celebrated. In contrast, a student, in the ordinary course of participating in a wrestling program, will attend and participate in many wrestling meets. Although an individual bout may be extremely important, it does not encapsulate the student's life in the way that graduation does, nor is a bout often seen as a milestone, or a rite of passage, in the way that a high school graduation is. Similarly, although it is by no means unusual for friends or family members to attend a wrestling meet, or to celebrate afterwards if the student is victorious, the celebrations and family attendance pale in comparison to that surrounding a high school graduation. For these reasons, the court is of the opinion that a high school wrestler freely chooses to step up to the mat every time he or she does so.

**9.** This court is aware of only one case in which a court held that allegations that a teacher coerced a student into making a choice against that student's free will stated a cause of action under § 1983. That case, *Arnold v. Board of Education of Escambia County Alabama,* 880 F.2d 305 (11th Cir.1989), is clearly distinguishable, however, since it involved allegations that a guidance counselor and a vice-principal, acting over a two month period, coerced a student into having an abortion. *See Arnold,* 880 F.2d at 312. Although the plaintiff in this case could conceivably argue that the coach coerced Michael into resuming the bout, the plaintiff cannot demonstrate, as the plaintiff in *Arnold* could, that a teacher acted over a long period of time to break down and override a student's will. Nor can the plaintiff in this case demonstrate the same degree of involvement by school officials in the student's decision. *See Arnold,* 880 F.2d at 309 (guidance counselor and vice-principal paid for the abortion and allowed the student to "work off" the debt, and the vice-principal paid a third party $20.00 to drive the student to an abortion clinic). Most importantly, the case at bar does not involve a right as sensitive as a woman's right to choose, or not to choose, to have an abortion. For these reasons, the plaintiff cannot state a claim under *Arnold.*

free will and volition. Having done so, a § 1983 claim cannot be asserted on Michael's behalf, even if Michael, in hindsight, made the wrong decision. *See Reeves*, 754 F.Supp. at 1140 ("If the Court were to accept the Plaintiff's argument here that the Constitution somehow imposes a duty on school officials to provide for the safety of students with respect to extracurricular activities, even though their participation in those activities is wholly voluntary, then there would no longer be any practical distinction between ordinary state-law negligence claims and federal constitutional violations, so long as the negligent party was acting under the color of state law.").[10]

### 2. *DeShaney*

■ In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court held that "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the ... Due Process Clause." *DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005. In *D.R. v. Middle Bucks Area Vocations Technical School*, 972 F.2d 1364 (3d Cir.1992), the Court of Appeals for the Third Circuit held that, even though school children must attend classes, the state has not restrained the liberty of school students to the point where the state is obliged to protect them from being harmed by third parties. *See D.R.*, 972 F.2d at 1372. *See also Ingraham*, 430 U.S. at 670, 97 S.Ct. at 1412 ("Though attendance may not always be voluntary, the public school remains an open institution. Except perhaps when very young, the child is not physically restrained from leaving school during school

hours; and at the end of the school day, the child is invariably free to return home. Even while at school, the child brings with him the support of family and friends and is rarely apart from teachers and other pupils who may witness and protest any instances of mistreatment.").

If *DeShaney* does not support a federal cause of action against a teacher when two female students allege that they were sexually abused by male students during a class which they were obliged, by statute, to attend, *DeShaney* cannot be the basis for a federal cause of action against a coach when a wrestler, who is not obliged in any way to participate in an extracurricular wrestling program, alleges that he was injured during a bout. *Cf. D.R.*, 972 F.2d at 1373. *See also Reeves*, 754 F.Supp. at 1140; *Arroyo v. Pla*, 748 F.Supp. 56, 60 (D.P.R.1990) (granting 12(b)(6) Motion in a § 1983 case brought by the family of a student who was shot and killed by another student during a class).

### IV. CONCLUSION

■ "[T]he Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation." *DeShaney*, 489 U.S. at 202, 109 S.Ct. at 1007. At most, the plaintiff in this case has alleged that the coach acted tortiously by sending Michael back into the bout. Since a high school coach cannot violate a student's constitutional rights by telling the student to continue participating in an interscholastic athletic competition, the plaintiff's case must be dismissed for failure to state a claim upon which relief can be granted.

---

**10.** Insofar as the plaintiff's claim can be read to assert a claim for the emotional distress caused by the coach's decision to send Michael back into the bout, dismissal is proper. There is no "liberty interest" protected by the Due Process Clause which creates a constitutional right to be free from emotional distress. *See Williams*, 784

F.2d at 435. *See also Edwards*, 883 F.2d at 886 ("Section 1983 is not available as a means for vindicating the honor of aggrieved plaintiffs, but rather as a means for compensating substantial losses occasioned by constitutional violations.").